Filed 6/28/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ENRIQUE ESPARZA et al., | B287927 |
| | (Los Angeles County |
| Plaintiffs and Appellants, | Super. Ct. No. BC369766) |
| v. | |
| | ORDER MODIFYING |
| SAFEWAY, INC., et al., | OPINION, DENYING |
| | PETITION FOR |
| Defendants and Respondents. | REHEARING |
| | |
| | [NO CHANGE IN |
| | JUDGMENT] |

THE COURT*

It is ordered that the opinion filed June 10, 2019 be modified as follows:

On page 9, lines 12 through 14, the quotation marks before the word "it" and ending after the word "penalties" are deleted;

On page 9, line 14, the following parenthetical is added after the word "penalties" and before the period: "("[W]age losses from the failure to receive the expected value of the right to receive 'premium pay' when

due have clear economic value to employees and can be monetized in an economically reasonable fashion")";

On page 25, lines 7 through 9, the quotation marks before the word "it" and ending after the word "penalties" are deleted;

The petition for rehearing is denied. The modification does not change the judgment.

_____

\*MANELLA, P.J.        WILLHITE, J.        COLLINS, J.

Filed 6/10/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ENRIQUE ESPARZA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SAFEWAY, INC., et al., <br><br> Defendants and Respondents. | B287927 <br> (Los Angeles County <br> Super. Ct. Nos. BC369766, <br> BC487830) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley, Jr.  Affirmed.

Matern Law Group, Matthew J. Matern and Mikael H. Stahle; Altshuler Berzon and James M. Finberg for Plaintiffs and Appellants.

Payne & Fears, James L. Payne, Jeffrey K. Brown and Ray E. Boggess for Defendants and Respondents.

# INTRODUCTION

Respondents Safeway, Inc. and The Vons Companies, Inc. (collectively Safeway) formerly maintained a policy or practice of failing to pay statutorily required premium wages when, if ever, Safeway violated its duty to provide employees meal periods. Safeway's duty was not to police meal breaks to ensure that no employees skipped them, but only to free employees from obligation and control, without impeding or discouraging them from taking their breaks. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1039-1041.) If Safeway did unlawfully dissuade an employee from taking a meal break, the Labor Code required Safeway to pay that employee a premium wage equal to one hour's pay. (*Ibid.*; Lab. Code, § 226.7, subd. (c).)

Prior to June 17, 2007, Safeway paid no premium wages for missed meal periods, without regard to whether an employee had been impeded or discouraged from taking a meal break. Plaintiffs-appellants Enrique Esparza, Cathy Burns, Levon Thaxton II, and Sylvia Vezaldenos -- all former Safeway employees -- appeal from a judgment against them on two causes of action related to this former policy or practice. The first, brought under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), sought to establish liability for the no-premium-wages policy itself. The second, brought under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.), was narrowed prior to trial: only appellant Vezaldenos sought to establish PAGA liability, and only for violations occurring

2

before June 17, 2007, when the no-premium-wages policy was in place.

Appellants successfully sought class certification for their UCL claim. In 2015, we rejected Safeway's challenge to the class certification, noting that plaintiffs did "not seek the unpaid accrued meal break premium wages" -- which would have required an individualized determination whether any class member had been denied a meal break -- "but instead maintain[ed] that valuing the loss of the 'statutory protections' to the class [could] be determined by a '"market value" approach.'" (*Safeway, Inc. v. Superior Court* (2015) 238 Cal.App.4th 1138, 1162.) We expressly declined to examine the merits of appellants' theory of restitution or their ability to quantify it using a market value approach. (*Id.* at pp. 1162-1163.)

Following our decision, Safeway moved in the trial court for summary adjudication of the UCL claim, arguing that appellants had shown no viable theory upon which the class could obtain restitution. The trial court agreed, concluding that appellants improperly sought recovery of premium wages without proving the classwide meal period violations necessary for the class members' interest in premium wages to vest. The court excluded the expert declaration on which appellants relied, exercising its gatekeeping duty under *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747.

The court also granted Safeway's motion to strike Vezaldenos's PAGA claim -- asserted for the first time in her

3

2009 second amended complaint -- as time-barred. Because Safeway ended its challenged practice on June 17, 2007, the court measured the applicable one-year limitations period from that date, yielding a deadline of June 17, 2008. It concluded that the statute of limitations barred Vezaldenos's claim because she waited until after that deadline to give notice to the Labor and Workforce Development Agency (LWDA), as PAGA required her to do *before* filing suit. The court rejected her argument that the PAGA claim related back to the April 2007 date of the original complaint. The court reasoned that the notice requirement serves the LWDA's interest in acting before information becomes stale; here, the LWDA received no notice prior to the 2007 original complaint and only untimely notice from Vezaldenos's 2008 notice letter.

Finding no error, we affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. *Complaints and Class Certification*

Before June 17, 2007, Safeway did not pay employees in its Vons and NorCal divisions premium wages for missed meal periods under Labor Code section 226.7 regardless of the reason for the missed meal periods. But beginning June 17, 2007, Safeway began to pay premium wages almost automatically for all missed, short, or late meal periods shown in reports generated by its new time-keeping system. Its older time-keeping systems also generated time punch

4

data that could be used to determine if and when employees took or missed meal periods before June 17, 2007.

Appellants all formerly worked for Safeway as store-level hourly employees in its Vons or NorCal divisions, including before June 17, 2007. Appellant Esparza initiated this action in April 2007, bringing a cause of action under the UCL and causes of action under the Labor Code. Neither the original complaint nor a subsequently filed first amended complaint included a PAGA cause of action. On July 7, 2008, over a year after Esparza filed the original complaint, all appellants served the LWDA with a notice of Labor Code violations for which appellants planned to seek civil penalties under PAGA.[1] Later that month, the LWDA sent appellants a response letter informing them the LWDA did not intend to investigate. Seven months later, on February 26, 2009, appellants filed the operative second amended complaint, adding, for the first time, a PAGA cause of action.

Appellants filed a motion to certify the following class on their UCL cause of action: "All individuals who worked as an hourly paid store level employee in Safeway Inc.'s NorCal or Vons division in California at any time on or after

---

[1] PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360 (*Iskanian*).)

5

December 28, 2001 and before June 17, 2007." The trial court certified this class, and we denied Safeway's writ petition challenging the certification order. (*Safeway*, *supra*, 238 Cal.App.4th at p. 1153.) We found that Safeway had forfeited, for purposes of writ review, challenges to the merits of appellants' restitution theory and proposed measure of restitution. (*Id.* at pp. 1162-1163.) We expressly noted, however, that Safeway remained free to challenge the merits of appellants' theory in the trial court. (*Id.* at p. 1162.)

### B. *Summary Adjudication of UCL Claim*

Accepting our invitation, Safeway filed a motion for summary adjudication of the UCL claim. Safeway faulted appellants for failing to identify measurable amounts of money or property that Safeway took from the class members by means of its no-premium-wages policy.

In their opposition, appellants proposed to measure classwide restitution by identifying *all* short, missed, and late meal periods before June 17, 2007 -- regardless of the reason each period was short, missed, or late -- and multiplying the number of those meal periods by the corresponding class members' hourly pay rates. Because the meal period premium wage is equal to an hour's pay (Lab. Code, § 226.7, subd. (c)), this proposed measure of restitution would effectively award premium wages for every short, missed, or late meal period reflected in Safeway's time punch data. Appellants relied on a declaration executed by

6

economist Andrew Safir, Ph.D., who discussed neither this proposed measure nor any other.  They offered no evidence to measure the class members' loss by reference to Safeway's curing its noncompliance with the statute, as they had proposed when seeking certification.  (*Safeway, supra,* 238 Cal.App.4th at pp. 1153, 1162.)  Moreover, as their counsel confirmed to the trial court at oral argument, appellants no longer proposed a market value approach.

The trial court granted Safeway's motion for summary adjudication of the UCL claim, reasoning that appellants "alleged no viable theory upon which [the class] could obtain restitution or injunctive relief."  The court deemed appellants' proposal for restitution "invalid in theory and practice," emphasizing two problems with it.

First, the court concluded, appellants improperly sought to recover an economic sum to which the class members had no vested right.  Noting that appellants effectively sought premium wages for every short, missed, or late meal period reflected in Safeway's time punch data, the court observed that the class members' interest in premium wages could not vest, absent proof of actual violations of the meal period statute.  Yet appellants had "eschew[ed] the individualized inquiries" necessary to such proof in order to obtain class certification.

Second, the court concluded, appellants' approach to restitution relied on Dr. Safir's declaration, which the court struck from the record as inadmissible under *Sargon, supra,* 55 Cal.4th 747, 772.  The court faulted Dr. Safir for

7

providing no data and relying instead on a "tautological approach . . . ." The court identified several assumptions framing Dr. Safir's central illustration: (1) workers have job offers from both Safeway and Competitor; (2) the jobs at Safeway and Competitor are exactly the same except that Safeway has a no-premium-wages policy and Competitor does not; and (3) workers know about this one and only difference because the market is perfectly competitive.[2] If these assumptions were true, rational workers would act on their knowledge of Competitor's superior premium wage policy by choosing to work for Competitor instead of Safeway. The "mandatory logical implication[]," the court noted, was that Safeway would have to pay higher wages than Competitor to convince employees to forego Competitor's superior premium wage policy, and that difference in wages paid by Safeway and by Competitor "would quantify the 'expected value' prospective workers place on the Competitor's superior meal period policy." But on these assumptions, Safeway would have paid its employees additional wages equaling that expected value. Thus, Safeway would have taken nothing from its employees that a court could properly return to them as restitution.[3]

---

[2] The court helpfully referred to "Competitor" where Dr. Safir referred to "Job A" or "Employer A," and to "Safeway" where he referred to "Job B," "Employer B," or "Firm B."

[3] On appeal, appellants agree with the trial court that if the class members actually operated in a market like the one posited
(*Fn. is continued on the next page.*)

Additionally, the court faulted Dr. Safir for invalidating his own approach by reversing an assumption vital to it. In the last paragraph of his declaration, Dr. Safir assumed that workers chose jobs "without realizing" that their new employers had inferior premium wage policies. If workers did not know the difference between employers' premium wage policies and therefore could not act on that knowledge when choosing between employers, the court observed, their choices could "never quantify the sum they would place on the meal period policy at issue." Dr. Safir's discussion of hypothetical worker choices therefore failed to support his suggestion that "it would be possible empirically to determine the value workers placed on an employer's policy of paying meal period penalties." Noting that "[w]hen expert opinion is 'clearly invalid and unreliable,' it is inadmissible [citing *Sargon, supra,* 55 Cal.4th at p. 772]," the court struck the expert declaration in its entirety.

## C. *Order Striking PAGA Claim*

Continuing to litigate their remaining causes of action, appellants filed a PAGA trial plan narrowing their PAGA cause of action to appellant Vezaldenos's claim based on violations before June 17, 2007. Soon thereafter, Safeway filed a motion to strike what remained of the PAGA cause of

---

by Dr. Safir, they would suffer no loss and restitution would be unnecessary.

9

action.  Among other arguments, Safeway argued the PAGA claim was barred by the statute of limitations because appellants asserted it for the first time in February 2009, more than one year after the violations ended in June 2007.  Appellants asserted the claim was not time-barred, arguing it should be deemed to relate back to the April 2007 original complaint.

The trial court struck the cause of action as time-barred.  It was undisputed that a one-year statute of limitations applied.  The court identified June 17, 2007, as the last date Vezaldenos was aggrieved by the underlying violations because Safeway ended its challenged practice on that date.  Accordingly, the court measured the one-year limitations period from that date, yielding a deadline of June 17, 2008.  Because Vezaldenos did not give notice to the LWDA until July 7, 2008 -- after the deadline -- she waited too long and the statute of limitations barred her claim.

The court rejected appellants' argument that the untimely PAGA claim -- first asserted in 2009 -- related back to the April 2007 date of the original complaint.  The court explained that the relation back doctrine is traditionally and properly applied where the sole actor other than the plaintiff is the defendant, who receives notice of the need to investigate from the original complaint.  Here, however, there was a third actor: the LWDA.  The LWDA received no notice from the original complaint -- which contained no PAGA claim -- and only untimely notice from Vezaldenos's notice letter, filed more than a year later.  The court

10

distinguished appellants' primary authority on the ground that it applied the original 2003 version of PAGA, which contained no pre-filing LWDA notice requirement. (See *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1195-1196, 1199-1200 (*Amaral*).)

The parties subsequently resolved appellants' remaining causes of action and submitted a stipulated judgment, which the trial court entered. Appellants filed a timely notice of appeal.

## DISCUSSION

### A. *The Trial Court Properly Granted Safeway Summary Adjudication on the UCL Claim*

### 1. *Standards of Review*

We review an order on a motion for summary adjudication de novo. (*Case v. State Farm Mutual Automobile Ins. Co., Inc.* (2018) 30 Cal.App.5th 397, 401.) "'A summary adjudication motion is subject to the same rules and procedures as a summary judgment motion.'" (*Ibid.*) "Generally, 'the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.' [Citation.]" (*Ibid.*) This burden-shifting framework changes neither our

presumption that the judgment is correct nor the burden on appellants to establish error on appeal. (*Ibid.*)

We review de novo any conclusions of law on which a trial court bases its exclusion of an expert declaration. (*Sargon, supra,* 55 Cal.4th at p. 773.) Otherwise, we review the exclusion of an expert declaration for abuse of discretion. (*Ibid.*) An expert declaration is inadmissible if it is "(1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative." (*Id.* at pp. 771-772.)

### 2. *Governing Principles*

Labor Code section 512 and the wage orders adopted by the Industrial Welfare Commission (IWC) require employers to provide employees meal periods.[4] (*Safeway, supra,* 238 Cal.App.4th at pp. 1147-1148.) As noted, they do not require employers to police meal periods to ensure that employees do no work. (*Id.* at p. 1148, citing *Brinker, supra,* 53 Cal.4th at p. 1040.) An employer satisfies its obligation to provide a

---

[4] Here, "the applicable wage order is IWC wage Order 7-2001 (Cal. Code Regs., tit. 8, § 11070), which obliges employers to provide at least one 30-minute meal break for shifts of more than five hours (absent a waiver available only in limited circumstances) (*id.*, subd. (11)(A)), requires employers to record meal breaks (*id.*, subd. (7)(A)(3)), and permits an 'on duty' meal break only with the employee's express written agreement (*id.*, subd. (11)(C))." (*Safeway, supra,* 238 Cal.App.4th at p. 1160.)

12

meal period "'if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so.'" (*Safeway, supra,* at p. 1148, quoting *Brinker*, *supra*, at p. 1040.)  "In contrast, if the employer knows that meal breaks are missed, shortened, or unduly delayed because the employer has instructed the employee to work, or has otherwise impeded the taking of breaks, that duty is contravened, absent a suitable waiver or agreement by the employee." (*Safeway,* at p. 1155, citing *Brinker*, at pp. 1039-1040, 1049.)

"[T]he remedy for a violation of the statutory obligation to provide IWC-mandated meal . . . periods is 'one additional hour of pay at the employee's regular rate of compensation for each work day that the meal . . . period is not provided.'" (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1256, quoting Lab. Code, § 226.7, subd. (b).)  The additional hour of pay required by Labor Code section 226.7 is a premium wage.  (*Safeway*, *supra*, 238 Cal.App.4th at p. 1148, citing *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102-1111.)  When unlawfully denied a meal period, an employee's interest in the premium wage vests, and the employee is immediately entitled to the premium wage without making a demand for it.  (*Safeway*, *supra*, at p. 1155 & fn. 5, citing *Murphy*, *supra*, 40 Cal.4th at p. 1108.)

13

A practice of not paying premium wages can violate the UCL.  (*Safeway*, *supra*, 238 Cal.App.4th at p. 1155.)  The UCL prohibits, as an unfair business practice, a "practice of not paying premium wages for missed, shortened, or delayed meal breaks attributable to the employer's instructions or undue pressure, and unaccompanied by a suitable employee waiver or agreement."  (*Safeway*, *supra*, at pp. 1155-1156.)  Injunctive relief is the primary remedy under the UCL.  (*In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 790.)  As an ancillary remedy, the UCL also authorizes recovery of restitution "'to restore to any person in interest any money or property . . . which may have been acquired by means of'" a prohibited business practice.  (*In re Tobacco Cases II, supra*, at p. 790, quoting Bus. & Prof. Code, § 17203.)  UCL restitution "'operates only to return to a person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice.'"  (*In re Tobacco Cases II,* at p. 795, quoting *Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325, 339.)  Injunctive relief and restitution are the only remedies available under the UCL.  (*Safeway*, *supra*, at p. 1147.)

A UCL claim must be based on the existence of harm supporting injunctive relief or restitution.  (See *Safeway*, *supra*, 238 Cal.App.4th at pp. 1154, 1158 [recognizing existence of harm supporting restitution as a fact necessary to establish liability on appellants' UCL claim, on which they did not seek injunctive relief]; *Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 445, 452-467 [affirming

14

dismissal, on demurrer, of UCL putative class claims where plaintiff "alleged no viable theory upon which he could obtain restitution or injunctive relief"].)  To support the recovery of restitution, the harm must be measurable.  (*In re Tobacco Cases II*, *supra*, 240 Cal.App.4th at pp. 791-802 [trial court lacked discretion to order restitution after bench trial, where plaintiff failed to establish "any price/value differential" supporting a market measure of restitution and failed to prove "entitlement to an alternative measure of restitution proper under all the circumstances"]; *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 228, 229 [plaintiffs "could not present UCL class claims for restitution" absent showing that the class members were due measurable restitution].)

### 3.  *Our Prior Decision*

Our prior decision found the trial court did not abuse its discretion in certifying appellants' UCL class.  (*Safeway*, *supra*, 238 Cal.App.4th at p. 1153.)  We did not examine the merits except to the limited extent necessary to determine the propriety of certification.  (*Id.* at pp. 1147, 1153.)  We declined to resolve Safeway's merits challenges to appellants' theory of restitution and, separately, appellants' proposed measure of restitution, finding Safeway had forfeited its challenges by failing to raise them until the appellate reply brief.  (*Id.* at pp. 1162-1163.)  We noted that Safeway remained free to attack appellants' theory on the merits in the trial court.  (*Id.* at p. 1162.)

15

Because appellants rely on it, we summarize our prior discussion of appellants' theory.  In support of certification, appellants did not propose to prove that Safeway maintained a common policy or practice of unlawfully denying meal periods.  (See *Safeway*, *supra*, 238 Cal.App.4th at pp. 1160-1161 [rejecting Safeway's argument that proof of common policy or practice of denying meal periods was necessary to appellants' recovery of classwide restitution because argument was directed at theory appellants did not assert].)  Instead, appellants offered evidence that Safeway maintained a common policy or practice of "never paying meal break premium wages when required . . . ."  (*Id.* at p. 1161.)  We held that a policy or practice of failing to pay premium wages after meal period violations is an unfair business practice within the meaning of the UCL.  (*Safeway, supra,* at pp. 1155-1156.)

We recognized, however, that appellants could not establish liability for this policy or practice without common proof of "the existence of harm supporting a recovery of restitution. . . ."[5]  (*Safeway*, *supra*, 238 Cal.App.4th at p. 1158.)  Appellants insisted that the harm underlying their

[5]    Alternatively, the existence of harm supporting injunctive relief could have sufficed.  (Cf. *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 790 ["[T]he right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution"].)  But appellants conceded the no-premium-wages policy ended in June 2007 and did not seek to enjoin it.  (*Safeway*, *supra*, 238 Cal.App.4th at p. 1152.)

16

liability theory was *not* unpaid premium wages. (*Ibid.*)
Their liability theory was premised on Safeway's "'classwide
practice of ignoring the statutory mandate'" of Labor Code
section 226.7. (*Safeway*, *supra*, at p. 1152.) This practice
allegedly harmed the class members by denying them the
value of working for an employer who did not categorically
ignore the statute's protections, which appellants called "the
'compensation guarantee and enhanced enforcement'
implemented by section 226.7." (*Id.* at p. 1158; see also *id.* at
p. 1153 [quoting appellants' contention that "'[h]ad they
taken comparable jobs at comparable pay with other
(presumably law abiding) retailers, the class members would
have received the benefits of these statutory protections and
would not have suffered this loss'"].) We recognized that
appellants could use time punch data and an evidentiary
presumption to attempt to establish that Safeway's error in
ignoring the premium wage statute was sufficiently deep
and system-wide to deny all class members the statutory
guarantee.[6] (See *id.* at pp. 1158-1160.)

Appellants proposed to use a market value approach to
measure the value of the statutory protections taken from

---

[6] We acknowledged that the time punch data and evidentiary
presumption could establish that "a significant number of
employees" accrued premium wages, but distinguished such a
showing from the different showing that "all -- or virtually all --
class members" accrued them. (*Safeway*, *supra*, 238 Cal.App.4th
at p. 1159.)

the class members.  (*Safeway*, *supra*, 238 Cal.App.4th at pp. 1153, 1162 ["[Appellants] do not seek the unpaid accrued meal break premium wages, but instead maintain that valuing the loss of the 'statutory protections' to the class can be determined by a "'market value" approach'"].)  Their proposed market value approach would have relied primarily on evidence of Safeway's own conduct in bringing itself into compliance with the premium wage statute.  (*Ibid.*)

Our decision did not approve appellants' theory of restitution.  Rather, it held that for purposes of class certification, appellants had adequately demonstrated their theory did not rely on individualized proof that class members had been improperly denied meal breaks.  (*Safeway*, *supra*, 238 Cal.App.4th at pp. 1161-1163.)  Indeed, we expressly declined to rule on the ultimate viability of appellants' theory of restitution or any proposed measure of restitution, noting that "[f]or purposes of our review, it is sufficient that the proposed measure does not require the litigation of issues unsuitable for class certification."[7]  (*Id.* at p. 1163.)

---

[7]     Contradicting the plain language in our opinion, appellants assert that we approved their theory on the merits in a manner establishing law of the case.  Not so.  We could establish law of the case only by stating principles necessary to our decision. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 893.)  Issues we expressly declined to address due to forfeiture were plainly not necessary to our decision.

### 4. *Analysis*

The trial court properly granted Safeway summary adjudication on appellants' UCL claim because appellants failed to submit evidence raising a triable issue of material fact regarding whether Safeway's no-premium-wages policy harmed the class members in a manner entitling them to the only UCL remedy appellants sought, viz., restitution. Even assuming appellants raised a triable issue regarding whether Safeway took from the class members the value of the statutory guarantee, they failed to raise a triable issue regarding their ability to measure that value.

Appellants' reliance on time punch data and the class members' hourly pay rates did not raise a triable issue of material fact regarding whether they could measure the value of the statutory guarantee taken from the class members. We previously recognized that appellants could use time punch data, together with an evidentiary presumption, to attempt to establish that Safeway's error in ignoring the premium wage statute was sufficiently deep and system-wide to deny all class members the statutory guarantee. (See *Safeway*, *supra*, 238 Cal.App.4th at pp. 1158-1160.) We expressed no opinion on how, or even whether, the time punch data could be used to measure the value of that denial. (*Id.* at p. 1163.)

On appeal, as in the trial court, appellants effectively propose to use the time punch data and hourly pay rates to measure accrued premium wages, not the value of the statutory guarantee. Appellants emphasize that the

19

Legislature established an hour's pay as a measure of the value of a *violation* of the meal period statute by providing a remedy equaling an hour's pay. But as the trial court correctly observed, appellants expressly eschewed predicating liability on classwide violations of the meal period statute. Appellants cannot recover the remedy for classwide violations while disclaiming any intent to prove them.[8] (*Culley v. Lincare Inc.* (E.D.Cal., Aug. 2, 2017, No. 2:15CV00081MCE-CMK) 2017 U.S. Dist. LEXIS 121834, *9-*10 [granting defendants' summary judgment and decertification motions on UCL class claim premised on same theory as appellants', because plaintiff sought to recover per-violation premium wages without proving violations].)

Appellants attempt to conflate the remedy for a statutory violation with the value of the statutory guarantee to receive that remedy. At the certification stage, they recognized that this equivalence could not be established without evidence. (See *Safeway*, *supra*, 238 Cal.App.4th at pp. 1153, 1162 [explaining that appellants proposed a market value measure relying on *evidence* that Safeway effectively identified the least costly method of correcting its

---

[8] At oral argument, appellants' counsel conceded that the recovery being sought, as measured by the premium wage, was the same recovery to which appellants would have been entitled had they proven that each missed meal period was, in fact, a violation of Safeway's duty.

noncompliant policy].)  However, appellants produced no evidence to support this equivalence in opposition to Safeway's motion for summary adjudication.

Dr. Safir's declaration, on which appellants also relied, did not raise a triable issue of material fact regarding whether appellants could measure the value of the statutory guarantee taken from the class members.  While Dr. Safir opined that "wage losses from the failure to receive the expected value of the right to receive 'premium pay' when due . . . can be monetized in an economically reasonable fashion," he neither articulated a methodology for quantifying the money lost by the class members nor attempted to apply one to quantify it.

Indeed, Dr. Safir discussed only imaginary matter. Appellants' counsel agreed with the trial court that Dr. Safir "entirely avoid[ed] the topic of reality."  Rather than discuss facts, Dr. Safir discussed a hypothetical example.  He assumed the existence of two employers, identical in all respects except that the first paid premium wages when due and the second -- like Safeway, formerly -- did not.  Dr. Safir stated that even when workers for neither employer would receive premium wages (because none would be due), workers for the second employer would receive less value from their jobs, as only they would be deprived of the value of the *guarantee* of premium wages.

Dr. Safir did not quantify this value or explain how it could be quantified, even hypothetically.  He did not discuss the wages the no-premium-wages employer "should" pay.

21

Nor, as the trial court observed, did he discuss the higher wages the employer would have to pay in his hypothetical, perfectly competitive market. On the contrary, Dr. Safir assumed the employer and its competitor paid the same $10-per-hour wage. This $10 figure is the sole quantified sum mentioned in his declaration. Dr. Safir attempted to quantify neither the wages an employer like Safeway would have had to pay in his hypothetical market nor the wages it should have paid in the real world. He never even articulated a method to calculate such wages.[9] Thus, the

---

[9] Dr. Safir failed to identify any method to quantify the value of the statutory guarantee despite discussing, in an inconsistent manner, potential perspectives from which it allegedly could be quantified. He stated that "[t]he value of having the right to receive the 'premium pay' when due must be determined *ex ante*." He implied that measuring the value *ex ante* means measuring it from the perspective of workers who, relying on their expectations of employers' premium wage policies, compared employers before accepting a job. If Dr. Safir believed the value must be determined *ex ante*, then his opinion undermined appellants' proposal to measure it by calculating accrued premium wages *ex post*. On the other hand, Dr. Safir stated that equally clear "*ex post* wage losses" resulted when workers chose a no-premium-wages employer without realizing that the employer did not pay premium wages. As the trial court noted, a worker's choice between two employers cannot reveal how the worker valued their premium wage policies if the worker had no idea what the policies were. Regardless, Dr. Safir neither identified nor attempted to apply any methodology, *ex ante* or *ex post*, to quantify the value of the statutory guarantee.

matter he discussed and his reasoning based on it provided no support for his opinion that appellants could quantify the value allegedly taken from the class members. The trial court therefore properly struck the declaration. (*Sargon, supra*, 55 Cal.4th at pp. 771-772.)

In their reply brief, appellants raise five challenges to the trial court's analysis of Dr. Safir's declaration. We address them in turn.

First, appellants fault the trial court for giving no indication that it liberally construed Dr. Safir's declaration. Courts liberally construe declarations submitted in opposition to summary adjudication only to the extent the declarations are admissible. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.) As explained, the trial court properly held Dr. Safir's opinion evidence inadmissible. Moreover, even if liberally construed, the declaration did not raise a triable issue of material fact.

Second, appellants mischaracterize Dr. Safir's declaration as unopposed. Respondents opposed Dr. Safir's declaration by filing objections to it. Respondents also argued for the exclusion of Dr. Safir's declaration in their reply brief. Relying on *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 533-534, appellants argue that Safeway's objections must be deemed overruled because the trial court did not explicitly rule on them. Regardless of any ruling (or failure to rule) on objections, the trial court retained discretion to exclude Dr. Safir's opinion evidence. (Wegner et al., Cal. Practice Guide: Civil Trials & Evidence (The Rutter Group

23

2018) ¶¶ 8:786 to 8:787; Evid. Code, § 803 ["The court may, and upon objection shall, exclude testimony in the form of an opinion that is based in whole or in significant part on matter that is not a proper basis for such an opinion"].)  It did just that.

Third, appellants fault the trial court for purportedly failing to evaluate Dr. Safir's declaration under the criteria of Evidence Code section 801.  Appellants support this argument only by describing Dr. Safir's declaration as a short "illustration of basic economic choices" conveyed through a simple hypothetical framed by "straightforward assumptions."  Assuming this description is true, it does not demonstrate that Dr. Safir relied on matter on which he could reasonably rely for his opinions, as required by Evidence Code section 801.  (*Sargon*, *supra*, 55 Cal.4th at pp. 771-772.)  Moreover, Evidence Code section 802, governing judicial review of the reasoning for an expert opinion, supplied an independent basis for excluding Dr. Safir's declaration.  (*Sargon,* at pp. 771-772; see also *id.* at pp. 776, 777, 778 [affirming exclusion of expert opinion in part because the expert used circular reasoning based on tautological "observations of the marketplace" to measure companies' innovativeness by their market share].)

Fourth, appellants assert, without explanation, that the trial court "appears to have allowed its own opinion about the subject matter [to] affect its evaluation of the declaration."  We find no support for this in the record.

24

Fifth and finally, appellants contend, again without explanation, that the trial court "appears to have relied on Dr. Safir's declaration to reach conclusions about the merits . . . even though the court struck the declaration." Again, the record does not support the assertion. The trial court accurately noted that appellants relied on Dr. Safir's suggestion that "it would be possible empirically to determine the value workers placed on an employer's policy of paying meal period penalties." The court reasonably concluded Dr. Safir's declaration was not admissible evidence of a "sound approach to restitution." Accordingly, it did not abuse its discretion in striking the declaration. (*Sargon*, *supra*, 55 Cal.4th at pp. 771-772.)

In sum, appellants failed to submit evidence raising a triable issue of material fact regarding whether Safeway's challenged conduct harmed the class members in a manner entitling them to restitution. Thus, the trial court properly granted Safeway summary adjudication on appellants' UCL claim.

## B. *The Trial Court Properly Struck the PAGA Claim*

### 1. *Standard of Review*

Appellants and Safeway both urge us to review the trial court's order striking the PAGA claim for abuse of discretion. As appellants assert and Safeway does not dispute, however, whether a trial court applied the correct legal standard in exercising its discretion is a question of law

requiring de novo review.  (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.)

### 2. *Governing Principles*

Before bringing a PAGA action, an aggrieved employee must give the LWDA written notice of the facts and theories supporting the Labor Code violations alleged.  (Lab. Code, §§ 2699.3, subds. (a)(1)(A), (b)(1), & (c)(1)(A) [civil action "shall commence only after" aggrieved employee gives notice].)  As California courts have repeatedly recognized, PAGA's pre-filing notice requirement is a mandatory precondition to bringing a PAGA claim.  (E.g., *Khan v. Dunn-Edwards Corp.* (2018) 19 Cal.App.5th 804, 808-810 [affirming summary judgment against PAGA plaintiff due to noncompliance with the pre-filing notice requirement]; *Williams v. Superior Court* (2017) 3 Cal.5th 531, 545 [PAGA plaintiff must provide pre-filing notice as a "condition of suit"].)  The employee may bring a PAGA action only after the LWDA either fails to act within a specified time or notifies the employee that the LWDA does not intend to take further action.  (Lab. Code, § 2699.3, subd. (a)(2)(A), (B); see also *id.* § 2699.5 [these procedures apply to alleged violations of Labor Code section 226.7].)

A PAGA action is subject to a one-year statute of limitations.  (*Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 839 (*Brown*), citing Code Civ. Proc., § 340, subd. (a).)  Generally, a statute of limitations begins to run when a cause of action accrues, meaning when the cause of

action is complete with all of its elements. (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1397.) Violations of a continuing or recurring obligation may give rise to "continuous accrual" of causes of action, meaning that "'a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.' [Citation.]" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1199; see also *Cuadra v. Millan* (1998) 17 Cal.4th 855, 859 [recognizing continuous accrual of causes of action for unpaid wages], disapproved on another ground by *Samuels v. Mix* (1999) 22 Cal.4th 1.)

The relation back doctrine allows a court to deem an amended complaint filed at the time of an earlier complaint if both complaints rest on the same general set of facts, involve the same injury, and refer to the same instrumentality. (*Brown, supra*, 28 Cal.App.5th at p. 841.) The relation back doctrine "cannot be used to frustrate the intent of the Legislature to require compliance with administrative procedures as a condition to filing an action." (*Ibid.*, citing *Bjorndal v. Superior Court* (2012) 211 Cal.App.4th 1100, 1113.) Thus, "the rule of relation back does not operate to assign the performance of a condition precedent to a date prior to its actual occurrence." (*Wilson v. People ex rel. Dept. Pub. Wks.* (1969) 271 Cal.App.2d 665, 669.)

### 3. *Analysis*

The trial court properly concluded Vezaldenos's PAGA claim was untimely. Vezaldenos narrowed her PAGA claim

to rest on alleged violations occurring before June 17, 2007. Causes of action for those violations accrued no later than that date. (See *Aryeh*, *supra*, 55 Cal.4th at p. 1199; *Cuadra*, *supra*, 17 Cal.4th at p. 859.) The one-year limitations period for any PAGA cause of action therefore expired no later than June 17, 2008. Vezaldenos neither asserted a PAGA claim nor even filed an LWDA notice until July 2008 -- after the limitations period had expired -- and did not first assert her PAGA claim until even later, in February 2009. Her PAGA claim was therefore time-barred unless it related back to the original complaint.[10]

The trial court properly rejected Vezaldenos's argument that her PAGA claim related back to the original complaint. As the court noted, *Amaral*, on which appellants relied, is inapposite, as it considered an earlier version of PAGA containing no pre-filing LWDA notice requirement. (*Amaral*, *supra*, 163 Cal.App.4th at pp. 1195-1196, 1199-1200; Stats. 2003, ch. 906, § 2 [enacting PAGA]; Stats. 2004, ch. 221, § 4 [adding Labor Code section 2699.3 and its LWDA notice requirements].) Further, we find no error in the court's reasoning that applying the relation back doctrine

---

[10] We need not decide whether Vezaldenos's PAGA claim could relate back to the date of her LWDA notice. (Cf. *Culley v. Lincare Inc.* (E.D.Cal. 2017) 236 F.Supp.3d 1184, 1192 [relating a PAGA claim back to the date of an LWDA notice filed within the limitations period].) The PAGA claim would be time-barred even if it related back to the LWDA notice because appellants provided the notice in July 2008 -- after the limitations period had expired.

despite a plaintiff's failure to give notice to the LWDA within the limitations period would frustrate the LWDA's interest in receiving notice before information becomes stale.

The animating purpose of PAGA as a whole is to promote the enforcement of labor laws within its scope. (*Williams*, *supra*, 3 Cal.5th at p. 545 ["The Legislature enacted PAGA to remedy systemic underenforcement of many worker protections"].)  But limitations on PAGA's scope show that its law enforcement purpose is not absolute. (See *Iskanian, supra*, 59 Cal.4th at p. 387 [noting that to avoid "'abuse'" by private plaintiffs, the Legislature chose not to give non-employees standing to prosecute PAGA actions].) Because the notice requirement is part of PAGA, the statute's overall remedial purpose does not allow courts to frustrate the Legislature's choice to make it a condition precedent to suit.  (Cf. *J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 654 [courts cannot construe away procedural requirements of the Government Claims Act in deference to the Legislature's special solicitude to claims of injured minors because the Legislature manifested that solicitude in a statutory framework that includes those procedural requirements].)

Moreover, PAGA's purpose is not to promote private enforcement without regard to the LWDA. On the contrary, our Supreme Court has stated that PAGA's "sole purpose is to vindicate [the LWDA's] interest in enforcing the Labor Code . . . ."  (*Iskanian, supra*, 59 Cal.4th at pp. 388-389,

29

italics added.)  The court subsequently explained that the notice requirement serves that purpose:

> "The evident purpose of the notice requirement is to afford the relevant state agency, the Labor and Workforce Development Agency, the opportunity to decide whether to allocate scarce resources to an investigation, a decision better made with knowledge of the allegations an aggrieved employee is making and any basis for those allegations. Notice to the employer serves the purpose of allowing the employer to submit a response to the agency (see Lab. Code, § 2699.3, subd. (a)(1)(B)), again thereby promoting an informed agency decision as to whether to allocate resources toward an investigation."

(*Williams, supra*, 3 Cal.5th at pp. 545-546.)  Relatedly, the legislative history of the amendment that added the LWDA notice requirement includes an observation that the amendment would improve PAGA by allowing the LWDA to act first on covered violations.  (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 375, citing Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 1809 (2003–2004 Reg. Sess.) as amended July 27, 2004, p. 5.)  Appellants' requested application of the relation back doctrine would improperly encourage private plaintiffs to act first by litigating Labor Code claims before giving untimely notice to the LWDA and adding untimely PAGA claims to their existing litigation.  (See *Harris v. Vector Marketing Corp.* (N.D.Cal., Jan. 5, 2010, No. C-08-5198 EMC) 2010 U.S. Dist. LEXIS 5659, at *11 [aggrieved employee's existing

litigation may dissuade the LWDA from prosecuting, undermining the notice requirement's function]; cf. *Bjorndal*, *supra*, 211 Cal.App.4th at p. 1110 [civil discovery could improperly supersede agency investigation if whistleblowers' pursuit of litigation could equitably toll Whistleblower Protection Act deadline for pre-suit administrative complaint].)

We find additional support for the trial court's conclusion in a decision rendered after the court's ruling. In *Brown*, *supra*, 28 Cal.App.5th at page 829, the court held that untimely PAGA claims could not relate back to an earlier complaint except to the extent the earlier complaint was preceded by an adequate LWDA notice for those claims. The plaintiff in *Brown* served the LWDA with notice of certain Labor Code violations in 2009. (*Brown*, *supra*, at p. 830.) She then filed a civil complaint that included a PAGA cause of action premised on the same Labor Code violations identified in her 2009 notice. (*Brown*, *supra*, at p. 830.) The limitations period for her PAGA claims expired in 2010. (*Brown,* at p. 839.) In 2016, the plaintiff served the LWDA with notice of new and different Labor Code violations and amended her civil complaint to add PAGA claims premised on these violations. (*Brown, supra,* at pp. 832-833.) The trial court sustained the defendants' demurrer to the 2016 complaint. (*Id.* at p. 833.)

The Court of Appeal agreed that the 2016 notice could not satisfy the LWDA notice requirement because the plaintiff served it after the statute of limitations had run.

(*Brown*, *supra*, 28 Cal.App.5th at p. 839.) It did find the 2009 notice satisfied the requirement with respect to one of the Labor Code violations it alleged, and remanded for the trial court to consider the extent to which any of the untimely PAGA claims could relate back to the original PAGA claim premised on the "adequately noticed" violation. (*Brown*, *supra*, at pp. 837-838, 841, 842.) The clear import of *Brown*'s holding is that an untimely PAGA claim may relate back to an earlier complaint only if the complaint was preceded by timely notice to the LWDA. (*Brown*, *supra*, at pp. 829, 842.)

Here, Vezaldenos asked the trial court to relate her untimely 2009 PAGA claim back to a 2007 complaint raising no PAGA claim and alleging no pre-filing notice to the LWDA. Thus, to an even greater extent than the plaintiff in *Brown*, she improperly sought to use the relation back doctrine "to frustrate the intent of the Legislature to require compliance with administrative procedures as a condition to filing an action." (*Brown*, *supra*, 28 Cal.App.5th at p. 841, citing *Bjorndal*, *supra*, 211 Cal.App.4th at p. 1113; see also *Bjorndal*, at p. 1113 [directing trial court to sustain demurrer to Whistleblower Protection Act claim where plaintiff failed to comply with deadline for required pre-suit administrative complaint, reasoning that plaintiff's requested use of the relation back doctrine "would violate the plain intent of the Legislature to require such compliance as a prerequisite to suit"]; see also *Wilson*, *supra*, 271 Cal.App.2d at pp. 667-669 [untimely substitution of the state

32

for a Doe defendant could not relate back to complaint's original filing date, where plaintiff failed to satisfy Government Claims Act requirement to present a written claim to the state or to secure an order relieving her of that duty before filing the complaint, even though she secured such an order after]; *Mazzei v. Regal Entertainment Group* (C.D.Cal., Dec. 13, 2013, SACV 13-1284-DOC (AGRx)) 2013 U.S. Dist. LEXIS 177883, at *12 [following *Wilson* in PAGA context, reasoning "amendment cannot retroactively bestow administrative compliance that did not exist when the plaintiff filed the initial complaint"].)

Appellants mischaracterize *Brown*'s holding to suggest that a PAGA claim relates back to an earlier complaint "where the PAGA notice and claim are filed while the plaintiff is still employed and so within the initial statutory period . . . ." Nowhere does *Brown* state or suggest such a holding. Similarly, appellants attempt to distinguish *Wilson* and federal cases on which Safeway relies on the ground that Vezaldenos was still employed by Safeway when she filed her LWDA notice and PAGA claim. But the end of Vezaldenos's employment is irrelevant to the timeliness of her claim premised on violations occurring years before her employment ended.[11]

---

[11]    Unlike Vezaldenos, some PAGA plaintiffs may base their claims on violations occurring at or through the end of their employment. Courts addressing those claims may use the end of employment as shorthand for the most recent time at which a
*(Fn. is continued on the next page.)*

The federal district court cases on which appellants rely would not convince us that plaintiffs may use the relation back doctrine to forego timely notice to the LWDA even if the cases unequivocally supported such use.  They do not.  (See *Chavez v. Time Warner Cable LLC* (C.D.Cal., Jan. 11, 2016, CV 12-5291-RGK (RZXx)) 2016 U.S. Dist. LEXIS 194546, at *14 [distinguishing but not contradicting *Mazzei*, *supra*, 2013 U.S. Dist. LEXIS 177883, at *15, and its holding that "because the plaintiff had not complied with pre-filing notice, she could not rely on the relation-back doctrine to 'retroactively bestow administrative compliance that did not exist when the plaintiff filed the initial complaint'"]; *Martinez, supra,* 2011 U.S. Dist. LEXIS 12198, at *28 ["Because the LWDA notice is a condition precedent to suit, this notice must be given prior to the running of the statute

---

cause of action may have accrued.  (See, e.g., *Slay v. CVS Caremark Corp.* (E.D.Cal., May 4, 2015, No. 1:14-CV-01416-TLN-GSA) 2015 U.S. Dist. LEXIS, at *13-*14 [plaintiff had one year "from the date of his termination" to file PAGA claims, but his PAGA cause of action for failure to provide his final wage statement accrued when defendants failed to provide it]; *Martinez v. Antique & Salvage Liquidators, Inc.* (N.D.Cal., Feb. 8, 2011, No. C09-00997-HRL) 2011 U.S. Dist. LEXIS 12198, at *27 (*Martinez*) [measuring one-year limitations period from the date the plaintiffs were terminated, describing it as the date "the violations occurred"].)  However, we are aware of no authority -- and appellants cite none -- holding that a PAGA cause of action accrues because of the end of employment.

of limitations"].)[12]  Moreover, these nonbinding cases could not have convinced us that plaintiffs may use the relation back doctrine to litigate untimely PAGA claims without giving notice to the LWDA within the limitations period.  As we and the trial court have explained, that use of the doctrine would frustrate the LWDA's interests in a manner contrary to legislative intent.

---

[12]    In several of the federal cases on which appellants rely, the plaintiffs -- unlike appellants -- provided notice to the LWDA within the limitations period.  (See *Donnelly v. Sky Chefs, Inc.* (N.D.Cal., Oct. 25, 2016, Case No. 16-CV-03403-JD) 2016 U.S. Dist. LEXIS, at *3-*4 [plaintiff provided notice to the LWDA before filing her earlier complaint and merely failed to wait for the LWDA's response or lack thereof]; *Perryment v. Sky Chefs, Inc.* (N.D.Cal., Sept. 30, 2016, Case No. 16-CV-04015-KAW) 2016 U.S. Dist. LEXIS 136155, at *6 [same]; *Martinez*, *supra*, 2011 U.S. Dist. LEXIS 12198, at *25 [plaintiffs provided notice to the LWDA after filing their original complaint but within the limitations period].)  The opinion in *Waisbein v. UBS Financial Services Inc.* does not state whether or when the plaintiff provided the LWDA notice.  (See *Waisbein v. UBS Financial Services Inc.* (N.D.Cal., Mar. 19, 2008, No. C-07-2328 MMC) 2008 U.S. Dist. LEXIS, at *1.)  In *Ramirez v. Ghilotti Bros. Inc.*, the plaintiffs submitted two LWDA notices concerning different Labor Code violations, first concurrently with the original complaint and then five months later.  (*Ramirez v. Ghilotti Bros. Inc.* (N.D.Cal. 2013) 941 F.Supp.2d 1197, 1209.)  The defendant did not dispute that the plaintiffs' untimely PAGA claims could relate back to the date of the second notice, implying that it, too, was provided before the limitations period had expired.  (*Ramirez v. Ghilotti Bros. Inc., supra,* at p. 1210.)

Appellants argue the trial court effectively "reversed" the application of the relation back doctrine because of appellants' strategy of narrowing their claim to violations occurring before June 17, 2007.  But they cite no authority suggesting the relation back doctrine can cure the untimeliness of their claim with respect to those violations simply because they previously alleged other violations.

In sum, the trial court properly found Vezaldenos's PAGA claim was untimely and that the relation back doctrine did not apply.  Accordingly, it did not err in striking the claim.  In light of our ruling, we need not address Safeway's alternative argument that the order should be affirmed because appellants' amendment adding their PAGA claim was untimely under Labor Code section 2699.3, subdivision (a)(2)(C).

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, P. J.


We concur:




WILLHITE, J.




COLLINS, J.