Filed 2/24/22  Elgawady v. City and County of S.F. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ABDELKADER ELGAWADY,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Defendant and Respondent. | A159616<br><br>(San Francisco City & County Super. Ct. No. CGC-17-561129) |

Appellant Abdelkader Elgawady sued the City and County of San Francisco (City), claiming he suffered personal injury from a dangerous condition of public property when he tripped over a metal plate affixed to a City sidewalk.  The trial court granted the City's motion for summary judgment, finding as a matter of law that the City lacked constructive notice of the allegedly dangerous condition.  On appeal, Elgawady contends the trial court erred in granting the motion because triable issues of fact remain as to whether the City had constructive notice of the condition.  He also asserts that the court erred in sustaining the City's evidentiary objections to opinions expressed by his expert witness and in denying his motion for a continuance.

We disagree.  Because Elgawady failed to present any evidence that the condition was obvious such that the City in the exercise of due care should have been aware of it, his claim fails notwithstanding his contention that the

condition may have been present for several months before his accident. As we will explain, his remaining contentions also lack merit and we affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Factual Background*

About noon on June 29, 2015, Elgawady was walking on the brick sidewalk near the corner of Fifth Street and Market Street in downtown San Francisco. As he attempted to cross Market Street, he tripped and fell over a circular metal plate, also referred to as a "flange," that was about 12 inches in diameter and one inch in height. The flange was attached to the sidewalk by four bolts that extended about an inch above the flange's surface. He did not see the flange before he fell. He sustained injuries to his knee, back, and right palm, and was taken to the hospital by an ambulance.

The flange had served as the base of a "wayfinder sign" that provided directions to nearby museums, shopping areas, and other attractions. The sign was installed in 2000 by the City's Department of Public Works (Department) in conjunction with the San Francisco Municipal Transportation Agency (SFMTA). It is undisputed that the City has no record of when the sign became detached from the flange, though a Google Maps Street View[1] image reflects that the sign was intact in January 2015. The sign was not removed by any of the City's employees. Following Elgawady's accident, the City removed the flange from the sidewalk. The

---

[1] "In May 2007, Google introduced 'Street View' to its map options. Street View permits users to see and navigate within 360 degree street level images." (*Boring v. Google, Inc.* (W.D.Pa. 2009) 598 F.Supp.2d 695, 698.)

City had not received any claims for injury or requests to repair the flange before Elgawady's accident.

## B.     *Pre-Summary Judgment Proceedings*

In September 2017, Elgawady filed a complaint against the City for personal injury. The operative pleading[2] asserts two claims, one for negligence under Government Code[3] section 815.2, and the other for a dangerous condition of public property under section 835. Elgawady alleged that unnamed City employees had negligently installed the sign and had later negligently failed to remove the flange. He further asserted that the flange was dangerous to pedestrians exercising due care and that this danger had existed long enough to provide the City with constructive notice.

In February 2019, seven weeks before the scheduled April 2019 trial date, Elgawady served his first deposition notice, seeking to depose the Department's then-director, Mohammed Nuru. In response, the City filed a motion for a protective order arguing that Elgawady's notice was unwarranted as Nuru was a high-ranking official with no personal knowledge of the accident that could not be obtained from another source. The City noted that it had offered to meet and confer with Elgawady concerning discovery as early as May 2018, but he never requested a meeting. He also had not filed any motions to compel discovery responses and had not noticed any other depositions.

In March 2019, the trial court granted the motion for a protective order. That same month, the parties jointly moved to continue the trial date to December 9, 2019. Elgawady asserted that discovery was incomplete and

---

[2] The original complaint contained 10 causes of action, eight of which were stricken following the City's successful demurrer in November 2017.

[3] All undesignated statutory references are to the Government Code.

that more depositions were required.  The trial court granted the continuance.

Counsel for the City designated Michael Lennon, the deputy bureau manager for the Department's Bureau of Street Use and Mapping, and Noel Laffey, the manager of the SFMTA's sign shop, as witnesses in their professional capacities as City employees.  Lennon was deposed in May 2019 and Laffey was deposed in October 2019, after the City filed its motion for summary judgment.

At his deposition, Lennon testified that he had searched the Department's records and had not located any records of inspections or complaints concerning the subject wayfinding sign.  He stated that the Department responds to complaints about sidewalk conditions and will correct any defects that need to be addressed.  The Department also maintains a sidewalk inspection and repair program that is designed to inspect all City sidewalks on a 25-year rolling basis.  The program was currently staffed by five inspectors who had yet to inspect the area around Fifth and Market Streets.  Lennon admitted that more frequent sidewalk inspections would be beneficial, however, the Department did not have the resources to inspect all of the City's sidewalks on a monthly basis.  Lennon also acknowledged that Market Street is a highly trafficked area and that the Department is responsible for repairing the street's brick sidewalks.  He did not know why this area was not inspected more frequently.

Lennon had downloaded the Google Maps Street View image of the sidewalk corner where the accident occurred to confirm the presence of the wayfinding sign.  He did not know who had installed or removed the sign but believed such signs were the SFMTA's responsibility.  He had found no records or other information about the sign or its specifications.  He also had

4

no information as to whether permits were required to install such signs or whether the SFMTA had applied for such a permit.

## C.     *Summary Judgment Proceedings*

In August 2019, the City filed a motion for summary judgment.  The City first asserted that Elgawady's section 815.2 claim failed because he had offered no evidence to support his allegations of wrongdoing by a City employee and because his exclusive remedy was limited to that found under section 835.  The City also argued that his section 835 claim failed because there was no evidence that the City had actual or constructive notice of the alleged dangerous condition prior to his fall.  The City noted that in his responses to interrogatories seeking the factual basis for his claims, Elgawady asserted that a City employee had negligently removed the wayfinding sign.  However, he had not provided any factual support for this assertion.  The City's motion was supported by declarations of Lennon and Laffey.  When Laffey was subsequently deposed, he stated that he had no information as to how the wayfinding sign came to be removed.

In his opposition, Elgawady complained that "discovery has been hindered due to [the City's] unwillingness to cooperate fully," claiming that the City had failed to identify employees having actual personal knowledge of the sign so that they could be properly deposed.  Instead, the City had produced witnesses who were unable to answer his questions.  Elgawady asserted that he needed to depose unnamed City employees who had either worked or walked in the area of Fifth and Market prior to his fall, claiming they "should have seen the missing . . . sign and reported it."  He also asserted that his counsel needed more time to conduct discovery, however, he did not ask the court to continue the hearing on the motion.  Instead, he filed

5

an ex parte application for an order shortening time to hear a motion to continue the trial date.

Elgawady also argued that there were disputed material facts as to whether a City employee had created the allegedly dangerous condition and whether the condition existed long enough to give the City constructive notice. His argument was based largely on the declaration of Zachary Moore, a safety engineer and accident reconstruction expert. Moore opined that the City knew or should have known of the dangerous condition, asserting it was "more likely than not" that City employees had removed the wayfinding sign because these employees have "the specialized tools and knowledge required for the removal of [City] signposts." Additionally, he claimed that the City would have had notice of the dangerous condition because "multiple [City] employees [would have been] in the immediate vicinity of the subject flange in the up to six months it existed without the signpost on the sidewalk." He conceded, however, that he could not say exactly when the sign had been removed. In its reply, the City objected to Moore's opinions as speculative and lacking foundation.

At the November 7, 2019 hearing on the City's motion, Elgawady sought to introduce an amended declaration from Moore that purportedly cured the City's evidentiary objections. The trial court denied the request as untimely. That same day, the court filed its order granting the City's motion for summary judgment. The court rejected Elgawady's section 815.2 claim, finding he was limited to pursuing a claim for dangerous condition of public property. The court also found that the City had met its initial burden of production by highlighting Elgawady's factually devoid interrogatory responses, and found that his opposition had offered no evidence as to how or when the sign was removed from its base. Nor did Elgawady provide

6

evidence to suggest that the defect was so obvious that the City would have discovered it with due care.  The court also sustained the City's evidentiary objections to Moore's declaration.  The court denied Elgawady's request for more time to conduct discovery due to his failure to present a declaration as required by Code of Civil Procedure section 437c, subdivision (h), as well as his failure to demonstrate his counsel's due diligence.  Judgment against Elgawady was entered in November 2019.  This appeal followed.

## II.

## DISCUSSION

### A.    *Standard of Review*

A defendant moving for summary adjudication "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  To meet this burden, the defendant must show one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action.  (*Ibid*.)  The defendant may make this showing by relying on the plaintiff's "factually devoid discovery responses." (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590.)  Once the defendant has met that burden, the burden shifts to the plaintiff to make a prima facie showing that a triable issue of material fact exists.  (*Aguilar*, at p. 850.)  The opposing party must make that showing with admissible evidence.  (Code Civ. Proc., § 437c, subd. (d); *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 ["Only *admissible evidence* is liberally construed in deciding whether there is a triable issue."]; accord, *Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 57; *Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 846.)

7

We review the trial court's summary judgment ruling de novo. (*Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69.) We interpret the evidence in the light most favorable to plaintiff as the nonmoving party, and resolve all doubts about the propriety of granting the motion in his favor. (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.) We consider all the evidence before the trial court except that to which objections were made and properly sustained. (*Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451–1452.) "We review the trial court's evidentiary rulings made in connection with a summary judgment motion for abuse of discretion." (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 467.) As the party challenging the trial court's evidentiary rulings, plaintiff has the burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.)

## B. *Summary Judgment Was Properly Granted as to the Section 815.2 Claim*

The City's liability for Elgawady's injuries, if any, is defined by statute; specifically the portion of the Government Claims Act (§ 810 et seq.), entitled Liability of Public Entities and Public Employees. (§§ 814–895.8, added by Stats. 1963, ch. 1681, § 1, pp. 3266–3284.) These statutes declare a general rule of immunity (§ 815) and then set out exceptions to that rule. Section 815 provides, in part: "Except as otherwise provided by statute . . . [¶] . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee . . . ." (§ 815, subd. (a).)

8

The complaint's first cause of action invokes the exception for vicarious liability for employee negligence, as set out in section 815.2.[4]  The complaint alleges that a City employee negligently failed to remove the exposed flange. Section 815.2 provides that public entities are liable for injuries caused by their employees within the scope of their employment "if the act or omission would, apart from this section, have given rise to a cause of action against that employee."  (§ 815.2, subd. (a).)  Section 815.2, subdivision (b) provides: "Except as otherwise provided by statute, a public entity *is not* liable for an injury resulting from an act or omission of an employee of the public entity *where the employee is immune from liability*."  (Italics added.)  By its plain terms, section 815.2 dictates that a public entity cannot be found vicariously liable for the acts of its employee unless that employee could be found individually liable for those acts.

Public employees are generally immune from liability for dangerous conditions of public property.  Section 840 states:  "Except as provided in this article, a public employee *is not liable for injury caused by a condition of public property* where such condition exists because of any act or omission of such employee within the scope of his employment."  (Italics added.)  It is well settled that because public employees are not liable for dangerous conditions, public employers cannot be held vicariously liable under section 815.2 for their employees' actions with respect to such conditions.  For example, in *Longfellow v. County of San Luis Obispo* (1983) 144 Cal.App.3d 379, a case also involving a sidewalk fall, the appellate court held that the plaintiffs had not stated a cause of action against the county for vicarious liability under section 815.2 because the county's employees were immune

_____

[4] The complaint does not cite to section 815.2, however, Elgawady's briefing indicates that he is attempting to pursue a vicarious liability theory.

9

from liability for dangerous conditions under section 840. (*Longfellow*, at pp. 382–383.) The *Longfellow* court specifically noted that "public entity liability for property defects is not governed by the general rule of vicarious liability provided in section 815.2, but rather by the provisions in sections 830 to 835.4 of the Government Code." (*Id.* at p. 383; see also *Van Kempen v. Hayward Area Park Etc. Dist.* (1972) 23 Cal.App.3d 822, 825.)

Here, the complaint specifically alleges that City employees working within the scope of their employment negligently created a dangerous condition by removing the wayfinding sign and leaving the flange attached to the sidewalk. Under section 840, the City's employees cannot be held liable for this allegedly dangerous condition as a matter of law. Because the City's employees are not liable, the City cannot be vicariously liable for its employees' alleged conduct with respect to the presence of the flange on the sidewalk.

On appeal, Elgawady contends that his claim falls under the exception to section 840 that is found at section 840.2. Section 840.2 provides, in relevant part: "An employee of a public entity is liable for injury caused by a dangerous condition of public property if the plaintiff establishes that the property of the public entity was in a dangerous condition at the time of the injury, . . . and that either: [¶] (a) The dangerous condition was directly attributable wholly or in substantial part to a negligent or wrongful act of the employee *and the employee had the authority and the funds and other means immediately available to take alternative action* which would not have created the dangerous condition; or [¶] (b) The employee *had the authority and it was his responsibility to take adequate measures to protect against the dangerous condition* at the expense of the public entity and the funds and other means for doing so were immediately available to him, and he had actual or

constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Italics added.)

The exception created by section 840.2 does not apply here. Elgawady has not identified any City employee as having caused the dangerous condition, let alone an employee having the authority and the funds to have taken alternative action or provided protective measures. While he asserts that the statute does not require him to identify a responsible employee, the cases he relies on are inapposite. Both *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872 and *Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1293 are distinguishable in that they concern rulings on demurrer, not summary judgment. "To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged." (*Tom Jones*, at p. 1292.) Here, Elgawady had the opportunity to conduct discovery, yet has not provided any evidence showing that any City employee was responsible for removing the wayfinding sign. Accordingly, the trial court properly granted summary judgment in favor of the City on Elgawady's section 815.2 claim.

## C. *Summary Judgment Was Properly Granted as to the Section 835 Claim*

The complaint's fifth cause of action alleges that the City maintained a dangerous condition of public property under section 835. A "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) For purposes

11

of this appeal, we will assume that the metal flange affixed to the sidewalk constituted a dangerous condition of public property.

In order to incur liability for a dangerous condition, a public entity must have had actual or constructive notice of the existence of the condition. Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity *had actual or constructive notice* of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Italics added.)

Elgawady argues that summary judgment was improper because he presented evidence raising triable issues as to the City's actual or constructive notice of the dangerous condition. Preliminarily, we note that he has offered no admissible evidence indicating that the dangerous condition was created by a City employee. Instead, it is essentially undisputed that the City was not responsible for causing the sign to become detached from its base. Accordingly, the City's potential liability is confined to section 835, subdivision (b), which requires the City to have had notice of the dangerous condition.

Section 835.2 provides that the notice requirement may be met by either actual notice (§ 835.2, subd. (a)) or constructive notice (*id.*, subd. (b)). To create a triable issue of fact as to actual knowledge, there must be "some

12

evidence that the employees had knowledge of the particular dangerous condition in question." (*State of California v. Superior Court* (1968) 263 Cal.App.2d 396, 399.)  Here, the undisputed evidence shows that the City did not have actual notice of the missing wayfinding sign or the flange.  The City offered Lennon's declaration stating that he had conducted a thorough search of all computerized records concerning complaints or inspection requests for the area where Elgawady fell and had confirmed the City had not received any complaints or inspection requests during the five years prior to the accident.  Laffey declared that based on his record review the SFMTA also had not received any complaints or request for inspection or repair concerning the wayfinding sign.  Nor had anyone informed the SFMTA that the sign had become detached or otherwise damaged before Elgawady's injury.  Thus, we are concerned only with whether the City had constructive notice.

To establish constructive notice under section 835.2, subdivision (b), a plaintiff must show the dangerous condition "existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."  Put another way, "[a] claim for constructive notice has two threshold elements.  [Citation.]  A plaintiff must establish that the dangerous condition has existed for a sufficient period of time and that the dangerous condition was obvious." (*Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 320 (*Heskel*).)  "Where the plaintiff fails to present direct or circumstantial evidence as to either element, his claim is deficient as a matter of law." (*Id.* at p. 317.)  The critical test for proving constructive notice is "whether 'the condition has existed long enough that it may be inferred that a reasonable

13

inspection would have ascertained its existence.' " (*Strongman v. County of Kern* (1967) 255 Cal.App.2d 308, 313.)

The City argues that Elgawady failed to carry his burden on summary judgment because he presented no evidence indicating that the wayfinding sign was missing for a sufficient time to provide constructive notice. We agree. The Google Maps Street View images provided to the trial court conclusively show only that the wayfinding sign was intact as of January 2015, and that it had become detached at some point before Elgawady's fall in June 2015. There was no evidence establishing exactly when the sign became detached from the flange.

On appeal, Elgawady requests that we take judicial notice of three Google Maps Street View images that were *not* provided to the trial court, purportedly showing that the wayfinding sign had been removed by February 2015. Because these documents were never presented to the trial court, we deny his request for judicial notice of these images.[5] (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [absent exceptional circumstances, appellate courts will only consider matters included in the record at the time judgment was entered].)

---

[5] The request for judicial notice is denied in its entirety. The three images dated February, July, and November 2015 were not presented to the trial court, nor was the Department's order No. 178,884, which Elgawady includes in his request. The two images dated January and June 2015 were presented to the trial court and are in the record on appeal, therefore judicial notice is unnecessary. Elgawady's further request for judicial notice of URL addresses from various websites run by the City's internal departments is also denied as these exhibits were not presented to the trial court and, in any event, are not subject to judicial notice. (See *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 889 ["we know of no 'official Web site' provision for judicial notice in California"].)

And we agree with the City that case law supports the conclusion that Elgawady has not established a triable issue of fact as to the element of constructive notice. As the City notes, the facts of this case are similar to those in *Heskel, supra,* 227 Cal.App.4th 313. In *Heskel*, the plaintiff tripped over the protruding base of a hollow metal post that was cemented into a city sidewalk. The post was not more than a few inches in height. (*Id.* at pp. 315–316.) The Court of Appeal upheld the trial court's grant of summary judgment, finding that the defendant city had met its burden of proof and that the plaintiff had failed to demonstrate the obvious nature of the condition. (*Id.* at p. 321.) The defendant city had presented two declarations from city employees averring that a search of the city's databases contained no reports or complaints having been made regarding the condition. Nor were there any reports of a downed street sign. (*Id.* at pp. 318–319.) The city further provided a declaration of a work crew supervisor stating that none of the workers had reported a downed street sign or the existence of a metal post while working in the subject area. (*Id.* at p. 319.) The *Heskel* court found that the declarations constituted substantial evidence to show that the condition was not obvious, shifting the burden to the plaintiff. (*Ibid.*)

In opposition, the plaintiff provided declarations from himself and another witness showing that the metal post had been there for over a year, as well as photographs of the post. (*Heskel, supra,* 227 Cal.App.4th at p. 320.) The court found that this evidence was insufficient to create a triable issue of material fact as to the obviousness of the condition. (*Ibid.*) The declarations offered by the plaintiff merely explained how long the structure had been present and how the plaintiff's fall had occurred. Nothing in the evidence showed how visible the condition was from the public street nor the size of the condition. (*Ibid.*) Although the plaintiff provided pictures of the

15

condition, the images were of poor quality, and the court concluded, "The pictures show a condition that was roughly a few inches in height. Evidence of a condition of that nature, without more, is not a prima facie showing that the condition was obvious." (*Ibid*.) The *Heskel* court upheld the trial court's grant of summary judgment for the defendant city based on the condition's lack of obviousness. (*Id*. at p. 321.)

In the present case, the City's evidence was sufficient to meet its burden of proof. The City's evidence is similar to that offered by the defendant city in *Heskel*. Taken together, a reasonable juror could only reasonably infer and conclude that the lack of complaints, coupled with the relatively small height differential of, at most, two inches at each of the flange's four bolts, shows that the flange itself was not sufficiently obvious to have placed the City on constructive notice of the object's dangerous condition.

Elgawady attempts to distinguish this case from *Heskel*, noting the defendant city in that case had at least attempted an inspection of the subject area. Here, Elgawady argues that no such attempt was ever made, citing to the Department's sidewalk inspection program and other evidence he claims shows that, absent a complaint, the City does not undertake reasonable efforts to ensure the safety or condition of its property. He further notes that during the 15 years since the wayfinding sign was installed, the City apparently never checked on the sign and could not produce documents about the history of the sign or its maintenance. He claims these circumstances would allow a jury to infer that the City had an inadequate inspection program. In support of this claim, Elgawady relies on out-of-state cases and California cases that predate the 1963 enactment of the Government Claims

16

Act, as well as cases that pertain to private entities.  The cases are not persuasive.

In any event, the adequacy of a public entity's inspection system is a "secondary" consideration in determining whether the entity had constructive notice of a dangerous condition.  (*State of California v. Superior Court*, *supra*, 263 Cal.App.2d at p. 400; see also *Strongman v. County of Kern*, *supra*, 255 Cal.App.2d at p. 313.)  As the court explained in *State of California*: "In the instant case, it can be validly argued that there was a triable issue on the question of inspection, but in determining whether there is constructive notice, the method of inspection has been held to be secondary.  The primary and indispensable element of constructive notice is a showing that the *obvious condition existed a sufficient period of time before the accident.*" (263 Cal.App.2d at p. 400.)

For similar reasons, we conclude Elgawady has failed to meet his burden to show a triable issue of material fact on the issue of constructive notice.  No evidence was offered to show that the dangerous condition was obvious apart from evidence that the height differential between the highest points of the flange and the sidewalk was approximately two inches.  Significantly, in *Heskel*, the court considered similar evidence of a differential of "roughly a few inches in height" and concluded that "[e]vidence of a condition of that nature, without more, is not a prima facie showing that the condition was obvious." (*Heskel, supra*, 227 Cal.App.4th at p. 320.)  Moreover, Elgawady lacked specific evidence as to how long the condition existed before his accident.  While he asserts on appeal that the condition must have been present for at least four months, we note the condition in *Heskel* had apparently existed for over a year.  In sum, we find summary judgment was properly granted in favor of the City on the section 835 claim.

17

***D.   The Trial Court Did Not Err in Sustaining the City's Objections to Moore's Declaration***

Elgawady contends that the trial court erred in sustaining the City's objections to statements in Moore's declaration.  We disagree.

A qualified expert may testify to an opinion on a subject "that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact."  (Evid. Code, § 801, subd. (a); see also *Bozzi v. Nordstrom, Inc.*, *supra*, 186 Cal.App.4th at p. 761.)  But an expert "does not possess a carte blanche to express any opinion within the area of expertise." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117.)  Thus, "an expert's opinion based on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors [citation], has no evidentiary value [citation] and may be excluded from evidence." (*Ibid.*)  Similarly, "an expert's conclusory opinion that something did occur, when unaccompanied by a reasoned explanation illuminating how the expert employed his or her superior knowledge and training to connect the facts with the ultimate conclusion, does not assist the jury. . . . to determine what occurred, but instead supplants the jury by *declaring* what occurred." (*Id.* at pp. 1117–1118; see also *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523–525 ["an expert opinion is worth no more than the reasons upon which it rests"]; *Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1135 ["The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed."].)

Here, the trial court struck Moore's opinion that "[i]t is more likely than not [the City] or [the City's] agent removed the signpost," finding the statement to be speculative and lacking any evidentiary support.  Without referencing any facts, Moore justified his opinion by stating that City

18

employees have "specialized tools and knowledge required for the removal of [City] signposts."  He did not identify any of these "specialized" tools.  Moreover, the mere possession of such tools does not reasonably allow for the inference that the sign was removed by City employees.

Moore also stated that the City "had multiple employees in the immediate vicinity of the subject flange in the up to six months it existed without the signpost on the sidewalk."  However, he did not include any facts as to when or how the sign was removed or whether the City would have had sufficient time to remedy the danger presented by the flange, stating only that "[a]t some time between January 1, 2015 and June 29, 2015," the sign was removed.  Accordingly, there are no facts to support the conclusion that the flange had been exposed for up to six months.  Because Moore's opinions lack factual support, we conclude the trial court did not abuse its discretion in striking the challenged portion of Moore's declaration.

### E.     The Trial Court Did Not Err in Denying a Continuance

Elgawady contends that the trial court erred in denying his motion for a continuance to allow him to obtain further evidence.  The court based its ruling on the absence of a declaration as required by Code of Civil Procedure section 437c, subdivision (h), along with its finding that Elgawady had "neglect[ed] to show diligence."

Code of Civil Procedure section 437c, subdivision (h) provides:  "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just."  "Subdivision (h) was added to section 437c ' "[t]o mitigate summary

19

judgment's harshness," . . . [Citations]' [Citation] 'for an opposing party who has not had an opportunity to marshal the evidence[.]' [Citation.] The statute mandates a continuance of a summary judgment hearing upon a good faith showing by affidavit that additional time is needed to obtain facts essential to justify opposition to the motion. [Citations.] Continuance of a summary judgment hearing is not mandatory, however, when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under section 437c, subdivision (h). [Citations.] Thus, in the absence of an affidavit that requires a continuance under section 437c, subdivision (h), we review the trial court's denial of appellant's request for a continuance for abuse of discretion." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 253–254.) Here, an affidavit was not submitted and the record fails to establish that the trial court abused its discretion in denying a continuance of a summary judgment hearing.

First, Elgawady's counsel did not satisfactorily explain the reason for her failure to conduct the discovery necessary to present further opposition evidence at the hearing. A showing of discovery diligence, in the nature of an explanation of what efforts were made to obtain the evidence and why they were not undertaken earlier, is required by a party seeking relief under Code of Civil Procedure section 437c, subdivision (h). (*Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 191; *A & B Painting & Drywall, Inc. v. Superior Court* (1994) 25 Cal.App.4th 349, 356–357.) At the time of the hearing on the summary judgment motion, the action had been pending for over two years. During that time, Elgawady had rejected the City's offer to meet and confer regarding discovery. While he complains that the City's witnesses lacked personal knowledge regarding the subject wayfinding sign, he never brought

20

a motion to compel, instead waiting until the eve of the November 9, 2019 discovery cut-off to request a continuance of the December 9, 2019 trial date.

Further, Elgawady failed to demonstrate with any specificity that " 'facts essential to justify opposition may exist.' " (*Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 548.)  The only specific discovery source he identified was a former Department director, Mohammed Nuru, the person he believed was the "person most knowledgeable."  However, the trial court had already issued a protective order as to Nuru.  Apart from Nuru, Elgawady indicated only that he wished to depose unnamed City employees  who "would have or should have noticed that the 10ft [wayfinding] sign was missing."  We note it is undisputed that the City has no records of having received any complaints or requests for service regarding the sign.  It is difficult to imagine that any City employee would have retained an independent recollection about a missing sign more than four years after the sign had been removed.  We conclude the trial court did not abuse its discretion in denying Elgawady's last-minute request to continue the summary judgment hearing.

## III.

## DISPOSITION

The judgment is affirmed.

EAST, J.*


WE CONCUR:


HUMES, P. J.


MARGULIES, J.


A159616
*Elgawady v. City & County of San Francisco*

---

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22