Filed 7/27/23  East Coast Foods v. KG Law CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| EAST COAST FOODS, INC. et al, | B313056 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 19STCV32858) |
| KG LAW, APC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Rostam Law, Glen H. Mertens, Carlos A. DeLaPaz for Plaintiff and Appellant.

Nemecek & Cole, Vikram Sohal for Defendants and Respondents.

East Coast Foods, Inc. (ECF) and Herbert Hudson, ECF's president and sole shareholder, brought an action against respondents KG Law, APC and attorney Vahe Khojayan. The complaint alleged claims including legal malpractice and negligent and intentional misrepresentation arising from respondents' representation of ECF in bankruptcy proceedings. As relevant here, Hudson contended that respondents represented to him that they were acting as counsel for him individually, as well as for ECF, and his reliance on that representation led to negative outcomes in the bankruptcy. The court largely sustained respondents' demurrer, leaving only Hudson's claims alleging negligent and intentional misrepresentation.

The trial court subsequently granted respondents' motion for summary judgment, finding that Hudson failed to show a triable issue of fact as to multiple elements of his misrepresentation claims. Hudson appealed. On appeal, Hudson asserts two procedural errors. First, he argues that the trial court erred in sustaining respondents' objections to his evidence without ruling on each objection individually. Second, he contends that the court abused its discretion by striking the portion of his opposition brief that exceeded the allowable page limits, without giving him an opportunity to cure the deficiency. We find no error in these rulings.

In addition, Hudson contends that he raised triable issues of fact to support his claims for misrepresentation. Respondents argue that Hudson offered only his self-serving declaration and therefore did not produce evidence sufficient to defeat summary judgment. We agree with respondents. We therefore affirm the judgment.

2

**FACTUAL AND PROCEDURAL HISTORY**

## I.    The Complaint

Hudson is the president and sole shareholder of ECF.  ECF operates four locations of the restaurant chain Roscoe's House of Chicken and Waffles in Southern California.[1]  In 2016, ECF filed a Chapter 11 bankruptcy petition in federal bankruptcy court (the bankruptcy action).  At the time, ECF was facing a multi-million dollar judgment entered against it from a lawsuit by a former employee, as well as several other pending lawsuits.

ECF and Hudson filed a complaint in September 2019 against respondents.  The complaint alleged the following causes of action: (1) legal malpractice (by ECF); (2) negligence (by Hudson); (3) breach of fiduciary duty (by ECF and Hudson); (4) intentional misrepresentation (by Hudson); and (5) negligent misrepresentation (by ECF and Hudson).

As relevant here, the complaint alleged that respondents represented ECF as counsel from March to September 2016 in connection with filing the bankruptcy action.  The complaint also alleged that Hudson, as the sole shareholder of ECF, "was of the belief that he retained [respondents], as his lawyer [*sic*], to represent HUDSON individually" in the bankruptcy action.[2]  Prior to the filing of the bankruptcy petition, Hudson "confirmed with [respondents] that they would represent his interests in the [bankruptcy action] along with those of Plaintiff ECF."  The

---

[1]    The other three locations are owned by other entities connected to Hudson.

[2]     The complaint also alleged that respondents failed to adequately represent ECF and, to the extent they did represent Hudson, failed to adequately discharge those duties.  Those allegations are not relevant to the misrepresentation claims at issue here.

3

complaint further alleged that Hudson "asked [respondents] if there were any potential or actual conflicts of interest with [respondents] representing both HUDSON and ECF in the [bankruptcy action], and [respondents] responded by stating that there were no actual or potential conflicts that would prevent their representation of both [Hudson and ECF]. Accordingly, Plaintiff HUDSON was under the impression that [respondents] were representing his interest in connection with the [bankruptcy action] as well as those of ECF."

In August 2016, Hudson appeared for a debtor examination, at which respondents "purported to represent both" Hudson and ECF. Hudson alleged that he answered questions from creditor's counsel "under the belief" that respondents were acting as his lawyers. Hudson also relied on the advice of respondents when instructed not to answer "many relevant, proper questions." According to the complaint, the debtor examination "did not fare well for Plaintiffs and was then thereafter used against them in the [bankruptcy action] by creditors, trustees, and others." In September 2016, the appointed bankruptcy examiner filed a "scathing Status Report" after reviewing ECF's records. Shortly thereafter, the bankruptcy court appointed a Chapter 11 trustee, at which point ECF was no longer the debtor-in-possession. Hudson alleged that he "later discovered that [respondents] never in fact" represented him in the bankruptcy action, but rather only represented ECF.

In support of his fourth and fifth causes of action for intentional and negligent misrepresentation, respectively, Hudson alleged that respondents misrepresented to him prior to the filing of the bankruptcy action and during the debtor examination that they were representing him "as his attorney

4

[*sic*]." However, respondents "did not in fact represent Plaintiff HUDSON as his attorney." Hudson further alleged that respondents knew their statement was "false when they made it, or that they made the representation recklessly and without regard for its truth," and they intended that Hudson would rely on the misrepresentation so that Hudson "would continue to cause Plaintiff ECF to retain [respondents'] services as the counsel for the debtor-in-possession" in the bankruptcy action. Hudson also alleged that he "reasonably relied" on these misrepresentations and continued to retain respondents as counsel for ECF. In addition, Hudson alleged that he was harmed "in that the value of his ownership shares in Plaintiff ECF have [*sic*] been diminished as a result of [respondents'] conduct and errors" in the bankruptcy action and in having to "incur additional expenses in the form of legal fees and other expenses to correct the individual issues" caused by respondents. The complaint sought general damages, punitive damages, attorney fees, and costs.

Respondents demurred to the complaint. In January 2020, the court sustained the demurrer as to all claims alleged by ECF, finding that the first cause of action for malpractice was barred by the *Barton* doctrine[3] and the applicable statute of limitations. The court also found that the statute of limitations barred ECF's third and fifth causes of action, as well as Hudson's second and

---

[3]     Derived from *Barton v. Barbour* (1881) 104 U.S. 126 (*Barton*) and its progeny, the doctrine "requires, before filing a lawsuit against officers appointed or approved by the court, obtaining leave from the bankruptcy court that appointed or approved them." (*Akhlaghpour v. Orantes* (2022) 86 Cal.App.5th 232, 238–239.)

third causes of action. The court dismissed these claims with prejudice, leaving only Hudson's fourth and fifth causes of action for intentional and negligent misrepresentation.

## II. Summary Judgment

### A. *Motion*

Respondents filed a motion for summary judgment in December 2020. They argued that Hudson could not prove the elements of his misrepresentation claims as a matter of law. They also argued the remaining claims were barred by the *Barton* doctrine and the doctrine of unclean hands. They further sought summary adjudication on the grounds that the fifth cause of action was time-barred and the prayer for punitive damages was without merit.

Respondents argued that they had never agreed to represent Hudson individually and that it would be unreasonable for Hudson to have believed otherwise. In support of this argument, they attached numerous exhibits, including the retainer agreement between KG Law, as the attorney, and ECF, as the client. Under that agreement, KG Law agreed to provide legal services to ECF in connection with filing and prosecuting the bankruptcy action "on behalf of Client." The agreement was signed by Hudson, as president of ECF, indicating that he had read, understood, and agreed to its terms.

They also attached documents from the bankruptcy action, including the June 2016 order by the bankruptcy court approving respondents as counsel for ECF in that case. Respondents also included the transcript from the debtor examination of Hudson, at which Khojayan appeared on behalf of the debtor, as well as the examiner's report. The examiner concluded that ECF's procedures "do not conform to reasonable accounting norms, or

6

any semblance of responsible management," and that "[t]he limited controls that do exist appear (by intentional design) to assure Hudson's personal access to [ECF's] cash funds while minimizing accountability for same."

Respondents also included documents related to their 2016 fee application filed in the bankruptcy matter, seeking payment for services rendered as bankruptcy counsel for ECF. Notably, a creditor filed an objection, arguing that respondents had a "conflict of interest" and were representing both ECF and its principal, Hudson, in connection with the bankruptcy. Respondents replied, stating that they never represented "any party other than debtor" during the bankruptcy action. Hudson also filed an objection in December 2016, on the basis that respondents mishandled the bankruptcy action for ECF. Hudson did not argue at that time that respondents purported to represent him individually. The bankruptcy court approved respondents' application in part, awarding some of the fees requested.

Respondents also attached discovery responses by Hudson, which they argued demonstrated the lack of detail in his misrepresentation claims. For example, when asked to state all facts supporting his contention that respondents made intentional misrepresentations, Hudson provided an interrogatory response stating that Khojayan represented to Hudson "before the filing of the bankruptcy petition in March 2016, that he would represent HUDSON in the bankruptcy action. Defendant KHOJAYAN continued to represent to HUDSON that he was representing HUDSON's interests in the underlying bankruptcy matter." When asked to explain his contention that respondents intended that Hudson rely on the

7

misrepresentation, Hudson responded that respondents "knew that Plaintiff HUDSON would cause their services with Plaintiff ECF to become terminated had he known they were not representing" Hudson. When asked for facts supporting his reasonable reliance, Hudson stated simply that he "relied on Defendants' representations that they would represent" him in the bankruptcy action.

Respondents argued that Hudson provided similarly terse responses during his deposition in this matter. Hudson testified that he met with Khojayan in person in 2016 to discuss ECF filing for bankruptcy, and no one else was present during these meetings. He confirmed that he read the retainer agreement and signed it in his capacity as ECF president. He also testified that he never entered into an agreement where respondents agreed to represent him individually and did not recall respondents filing any document with the bankruptcy court representing that they were his attorney.

Hudson testified that during the debtor examination, he believed respondents were representing him individually as well as ECF. But when asked if he had any reason to believe he was appearing at the debtor examination as an individual, rather than in his capacity as president of ECF, he responded, "I don't know what I was there for." When asked why he believed that respondents were representing him individually, he responded, "because that's what [Khojayan] told me." When asked when Khojayan made that representation, Hudson answered, "I can't recall, but he told me that." Hudson also testified that he could not recall if Khojayan made that statement before or after he signed the retainer agreement, and could not recall the exact words used.

Hudson later testified that Khojayan made intentional misrepresentations to him "[w]hen he stated he was representing me." But he could not recall when or where such statements were made. He further testified, "I can't recall the situation. I know that he led me to believe he was representing me." Hudson explained that Khojayan led him to believe this through "his actions," but could provide no further details. He also stated that there were no other misrepresentations made by respondents.

Regarding his damages claim, Hudson testified that if Khojayan had told him he needed his own attorney, "none of this would have happened," because he would have fired respondents. As a result, the examiner's opinion would have changed, and no bankruptcy trustee would have been appointed. But he acknowledged that he did not ask the examiner whether his opinion would have changed. When asked if he believed "that the examiner's opinion of you would have changed had you retained a personal attorney," Hudson responded, "I don't know."

B.     **Opposition and Reply**

Hudson opposed the motion for summary judgment. He argued that his evidence was sufficient to raise material issues of fact as to the elements of his misrepresentation claims. He also contended that there were disputed facts regarding the affirmative defense of unclean hands and his claim for punitive damages, that the *Barton* doctrine was inapplicable, and that his claim was not time-barred.

In support of his opposition, Hudson submitted an 11-page declaration. He stated that "It was important for me to retain counsel for ECF that will also represent my interests as an officer of ECF. Therefore, during my initial meetings in March 2016, [respondents] confirmed with me that they would represent my

9

interests in the [bankruptcy action] as an officer of ECF . . . . I was led to believe that [respondents] would represent me along with ECF." He further stated that during these initial meetings, "I asked [respondents] whether there would be any potential or actual conflicts of interest with [respondents'] representation of both ECF and myself," and respondents stated that there were no such conflicts. Hudson continued, "In light of these conversations, I was led to believe that [respondents] were representing my interests."

Hudson acknowledged executing the retainer agreement, to which he was not a party, but stated that "when I executed the agreement, I was led to believe that I would be represented as an officer of ECF during any examinations or appearances for which I was required." He also declared that he appeared at the debtor examination along with respondents, "who purported to represent both I and ECF [*sic*]."

Hudson also included three exhibits with his declaration, a notice from the bankruptcy proceedings seeking insider compensation to Hudson of $15,500 per month, a bankruptcy order granting ECF's request to use cash collateral between May and June 2016, and a bill from Hudson's subsequent counsel. Hudson claimed he had to hire new counsel as a result of respondents' failure to represent him.

Respondents filed a reply, objecting that Hudson's opposition exceeded the 20-page limit under rule 3.1113(g) and requesting that the court disregard the entire opposition or strike the final six pages, which included Hudson's arguments regarding the Barton doctrine, the affirmative defense of unclean hands, the statute of limitations, and the right to punitive damages. Respondents also noted that the opposition contained

10

facts and argument about respondents' performance in the bankruptcy, which was irrelevant to the surviving claims for misrepresentation.  Respondents argued that the only evidence provided by Hudson was his own declaration, which could not create a triable issue of fact because it was inconsistent with his prior deposition testimony or discovery responses.

Respondents also submitted a total of 44 objections to Hudson's evidence, including 41 objections encompassing almost every paragraph of Hudson's declaration, as well as three objections to the three exhibits attached thereto.  Each numbered objection set forth a paragraph of the Hudson declaration, along with objections on multiple grounds, including lack of relevance, lack of foundation, improper expert testimony, speculation, hearsay, and improper legal conclusion.

### C.     Hearing and Ruling

At the March 2, 2021 hearing on the motion, the court started by noting that Hudson had failed to provide courtesy copies of his opposition papers to the court and also that the opposition violated the court rules.  The court indicated, however, that it would allow Hudson's counsel to make an argument. Hudson's counsel acknowledged that the opposition brief was longer than allowed by California Rules of Court, rule 3.1113[4] and apologized.  He explained that at the time he was drafting the opposition, he thought respondents' moving papers were also too long, but then later realized he was incorrect.  The court responded that the respondents' motion was not oversized and, moreover, "it's not that they made a mistake; so you get to do one too when you know, or should know, that the proper way to get

---

[4]     All further references to the rules are to the California Rules of Court unless otherwise indicated.

11

extra pages is in advance to get court approval, which, of course, was not done here." The court then asked respondents' counsel if he thought Hudson should "get a do-over." Respondents' counsel stated that he should not, and further that their motion should prevail on the merits.

Turning to Hudson's misrepresentation claims, the court pointed out that Hudson had given "very vague testimony" in his deposition and answers to discovery responses, and now was attempting to contradict that evidence with his declaration, which was insufficient in opposition to summary judgment. The court allowed Hudson one day to lodge a courtesy copy of his opposition, stating that once it was received and reviewed, "I'm likely to strike the oversized pages in your opposition. And I'm going to carefully look at the evidentiary objections filed with the reply by the defendant and determine whether or not your client, by lodging this belated declaration, is running afoul of summary judgment jurisprudence." Hudson's counsel argued that his declaration was consistent with his deposition testimony, and that he had also provided exhibits, which established triable issues of fact as to whether respondents "misled my client into believing they were representing him." Hudson's counsel did not raise any arguments regarding the court's statement about striking the excess pages of his brief, or any procedural objections to respondents' objections to the evidence. The court took the matter under submission.

On March 11, 2021, the court issued a written order ruling on respondents' evidentiary objections. The court ruled on each objection by checking the line indicating whether the objection was sustained or overruled. The court overruled four objections to Hudson's declaration (numbers 3 through 5 and 41, objecting

to declaration paragraphs 5 through 7 and 43) and sustained the remainder. The same day, the court granted summary judgment in favor of respondents. The court again recognized that Hudson had filed an oversized opposition brief without seeking the court's permission. However, the court concluded that although "the entire opposition could be disregarded, the Court exercises its discretion and instead strikes pages 21-26."

Turning to the substance of Hudson's misrepresentation claims, the court found no triable issue of fact as to the elements of intent to defraud, reasonable reliance, and causation of damages. For intent to defraud, the court pointed out that Hudson did not dispute that he never told Khojayan that he would terminate respondents' representation of ECF unless they also agreed to represent Hudson. Moreover, the court found that Hudson "otherwise has no evidence that [respondents] intended to defraud him." Similarly, the court found that Hudson had provided no "admissible evidence that it was reasonable to rely on a subjective 'belief' that [respondents] represented him in his personal capacity when the retainer agreement did not so provide. This is especially so because [Hudson] is the owner and president of several business entities and has admitted experience in retaining attorneys." The court noted that Hudson did not dispute that he read and signed the retainer agreement on behalf of ECF, he did not disagree with any of its terms before he signed it, the agreement specifically identified ECF as the client, and contained an integration clause.

As to causation, the court found that Hudson offered "only argument and no admissible evidence." Hudson did not dispute the facts presented by respondents that the bankruptcy court appointed the examiner, who submitted a report that was

13

"extremely critical of ECF's policies and procedures in general and of Hudson's management and control of ECF in particular," and concluded that ECF was "wholly incapable of dispensing its fiduciary obligations in this Chapter 11 case." Hudson also did not dispute that the bankruptcy court appointed a trustee after reviewing the examiner's report and later commented that "there were a number of problems with the way Mr. Hudson had run the business." The court noted that Hudson had not disputed that the bankruptcy court found that he had engaged in a fraudulent transfer of intellectual property from ECF to another entity he owned, and that he had admitted doing so to put "the value of the Intellectual Property beyond the reach of people who were trying to get at it through lawsuits." Thus, because Hudson failed to raise any material issues of disputed fact, the court found that respondents were entitled to judgment as a matter of law.

The court also found that Hudson failed to provide legal arguments (within the permissible page limit) in opposition to respondents' motion regarding the *Barton* doctrine, unclean hands, the statute of limitations, and punitive damages, and therefore granted the motion on those grounds. In addition, the court considered the substance of the parties' arguments, and found that respondents' points were well-taken.

The court entered judgment in favor of respondents on March 11, 2021. Hudson timely appealed.[5]

---

[5]      In his notice of appeal, Hudson also checked the box stating that he was appealing from the judgment of dismissal after an order sustaining a demurrer. However, he has not addressed any issues related to the demurrer in his opening brief and did not file a reply brief on appeal. Hudson has therefore abandoned any claims of error related to the demurrer and dismissal of ECF's

14

**DISCUSSION**

## I.    Standard of review

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  We interpret the evidence in the light most favorable to plaintiff as the nonmoving party, and resolve all doubts about the propriety of granting the motion in his favor.  (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.)

A defendant moving for summary judgment must make a prima facie showing that there are no triable issues of fact in order to meet its initial burden of production.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 861 (*Aguilar*); see also Code Civ. Proc. § 437c, subd. (c).)  Once the defendant has met that burden, the burden shifts to the plaintiff to make a prima facie showing that a triable issue of material fact exists.  (*Aguilar, supra,* 25 Cal.4th at p. 850.)  The opposing party must make that showing with admissible evidence. (§ 437c, subd. (d); *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 ["Only admissible evidence is liberally construed in deciding whether there is a triable issue."]; accord, *Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 57; *Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 846.)

---

and Hudson's claims other than those for intentional and negligent misrepresentation.  (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466 ["Issues not raised in an appellant's brief are deemed waived or abandoned."].)

"We review the trial court's evidentiary rulings made in connection with a summary judgment motion for abuse of discretion." (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 467.) As the party challenging the trial court's evidentiary rulings, the plaintiff has the burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason. (*DiCola v. White Bros. Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.)

## II. Analysis

Hudson raises two procedural claims of error, arguing that the trial court abused its discretion by failing to rule on individual evidentiary objections and by striking the excess pages of his opposing brief. Hudson also argues that he raised triable issues of fact in support of his misrepresentation claims. We find no error and agree with the trial court's conclusion that respondents were entitled to judgment as a matter of law.

### A. *The Trial Court Did Not Err By Sustaining Respondents' Objections.*

Hudson contends that respondents' objections to his evidence were procedurally improper because they submitted "groups" of objections rather than setting forth "each objection" individually. As a result, he argues that the trial court erred by "issuing broad-strokes rulings that groups of objections were sustained without individually ruling on each objection." We disagree.

Hudson cites rule 3.1354(b), requiring that "[e]ach written objection must be numbered consecutively," and rule 3.1354(c), requiring that the objecting party submit a proposed order that includes "places for the court to indicate whether it has sustained or overruled each objection." He argues that respondents

16

violated this rule by submitting "groups" rather than individual objections, and the trial court erred by sustaining the objections in groups rather than individually.

This contention lacks merit. It appears that Hudson is suggesting that respondents were required to set forth each ground as a separately numbered objection, rather than, as respondents did, identifying a paragraph of objectionable material and then listing multiple grounds for objection to that material. But Hudson has not cited to any authority supporting such a requirement. Indeed, in the example formats set forth in rule 3.1354, two grounds are listed under a single number as bases for a single objection. (See rule 3.1354(b) [each written objection must "[s]tate the grounds for each objection to that statement or material"].) Similarly, the format for the proposed order set forth in the rule contains lines for the court to mark whether the objection is sustained or overruled (see rule 3.1354(c)). This format is identical to the order format submitted by respondents and used by the trial court here. Thus, Hudson has failed to demonstrate any abuse of discretion.

Moreover, the trial court ruled on each individual objection raised by respondents. Thus, this case is factually distinguishable from those cited by Hudson. For example, in *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 254 (*Nazir*), the defendant included 764 objections to the plaintiff's evidence. The trial court overruled one objection and sustained the remainder in a single line of its summary judgment ruling. (*Ibid*.) The appellate court found a "manifest" abuse of discretion, as "there is no way that the trial court could properly have sustained 763 objections 'guided and controlled by fixed legal principles.'" (*Id*. at p. 255-256, quoting *Fasuyi v. Permatex* (2008)

17

167 Cal.App.4th 681, 695.) The court noted multiple issues with the sustained objections, including that some failed to assert any basis for the objection, some were to the plaintiff's brief rather than the evidence, and many were frivolous. (*Nazir, supra,* 178 Cal.App.4th at p. 256; see also *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 522 (*Greenspan*) [rejecting trial court's "cryptic" order on objections that "No. 28 is overruled; all others are sustained"].)

In any event, even if the manner in which the trial court ruled was error, our de novo review of the objections would reach the same result. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [conducting de novo review of objections on appeal].) Hudson does not challenge the merits of any of respondents' objections. Tellingly, he has not responded to respondents' argument, raised below and in the responding brief on appeal, that his declaration was replete with statements offering improper expert testimony, speculation, and legal conclusion, such as his statement that respondents "should not have accepted Plaintiff ECF's Chapter 11 case as they were not qualified nor competent to handle a complex case." Accordingly, we find no error in the trial court's order sustaining respondents' objections.

## B. *The Trial Court Did Not Err in Striking Portions of Plaintiffs' Brief.*

Hudson also asserts that the trial court abused its discretion in striking the final six pages of his opposing brief. He concedes that his brief exceeded the 20-page limit in violation of rule 3.1113. He also acknowledges that a court "has discretion to disregard non-conforming papers," but argues that the court "must do so only as a last resort." As such, Hudson asserts that the trial court should have given him the opportunity to refile a

18

conforming brief, and that its failure to do so was an abuse of discretion. We are not persuaded.

Rule 3.1113(g) provides that a memorandum exceeding the allowable page limit "must be filed and considered in the same manner as a late-filed paper." Thus, the court has discretion to refuse to consider the document in its entirety. (See rule 3.1300(d).) Here, when chastised by the court during the summary judgment hearing, Hudson's counsel explained that he had filed an oversized brief because he (incorrectly) believed that respondents' opening brief also exceeded the page limit. Despite this admittedly willful violation of the court rules, the court declined to strike the entire opposition brief, instead striking only the offending final six pages. We find no abuse of discretion in this decision.

The cases cited by Hudson are inapposite, as they discuss the issue of a deficient separate statement submitted in opposition to summary judgment. As these cases explain, the preferred practice is to provide a party the opportunity to cure the deficiencies, rather than to immediately grant summary judgment. (See *Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 74 ["Without question, trial court has every right 'to refuse to proceed with a summary judgment motion in the absence of an adequate separate statement from the opposing party.' [Citation.] However, an immediate grant of summary judgment is, in most instances, too harsh a consequence."].) Thus, for example, in *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1210, the Court of Appeal found that the trial court abused its discretion by granting summary judgment based on its exclusion of the

19

plaintiff's partially deficient separate statement, without offering the plaintiff the opportunity to cure the deficiencies.

Here, in contrast, having stricken a portion of Hudson's brief, the court did not immediately grant summary judgment. Instead, the court considered Hudson's arguments and evidence regarding the elements of his misrepresentation claims and granted summary judgment on that basis. The court did not abuse its discretion by doing so.

## C. *Hudson Failed to Raise a Triable Issue of Fact*

The trial court found that Hudson failed to present admissible evidence raising a triable issue of material fact as to three elements of his intentional and negligent misrepresentation claims—intent to induce reliance, justifiable reliance, and damages. Having reviewed the record, we agree.

A claim for intentional misrepresentation requires a plaintiff to prove the following: (a) a representation about a past or present material fact that is false; (b) knowledge of falsity; (c) intent to induce reliance; (d) justifiable reliance on the misrepresentation; and (e) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; see also *Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 72.) Negligent misrepresentation contains four of the same elements, but rather than knowledge of falsity, it requires a showing that the misrepresentation was made without reasonable grounds for believing it to be true. (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 983.)

As discussed above, the bulk of Hudson's evidence purporting to establish disputed issues of fact came from his declaration submitted in opposition to summary judgment. The trial court sustained respondents' objections to almost all of that

20

declaration. As a result, only three potentially relevant paragraphs remain. These paragraphs include Hudson's description of his initial meeting with respondents, his execution of the retainer agreement, and his statement that he was "led to believe" that respondents were representing him as well as ECF.

As to the remaining evidence, Hudson cannot create a triable issue of fact by submitting a self-serving declaration to contradict deposition testimony or discovery responses. (See *Visueta v. General Motors Corp*. (1991) 234 Cal.App.3d 1609, 1613 ["Admissions or concessions made during the course of discovery govern and control over contrary declarations lodged at a hearing on a motion for summary judgment"]; *Thompson v. Williams* (1989) 211 Cal.App.3d 566, 573–574 ["a party cannot rely on contradictions in his own testimony to create a triable issue of fact"]; see also *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 22.) Thus, the court may "give great weight to admissions made in deposition and disregard contradictory and self-serving affidavits of the party." (*Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 860.)

At his deposition, Hudson identified a single misrepresentation by respondents, when Khojayan "stated he was representing me." But Hudson testified that he could not recall when or where that statement was made, or any specific details as to the words or actions purportedly used. Hudson's written discovery responses are similarly lacking in detail. Hudson's declaration submitted in opposition to summary judgment seeks to add details of this misrepresentation, stating, for example, that he asked respondents "whether there would be any potential or actual conflicts of interest" in representing him individually along with ECF, and respondents replied that there

21

were no conflicts "that would prevent their representation of both Plaintiffs." We disregard those statements as contradicting Hudson's prior testimony that he did not recall what was said.

Turning to the elements of Hudson's misrepresentation claims, Hudson contends that he has raised a triable issue that respondents intended to induce reliance on their misrepresentation. In essence, he argues that respondents told him they would represent him individually in order to keep ECF as their bankruptcy client. However, as the trial court found, Hudson did not dispute that he never told respondents that he would terminate their representation of ECF unless they also agreed to represent Hudson. Hudson argues that he provided other evidence from which one could reasonably infer that respondents "did not want Hudson talking to other bankruptcy attorneys" and potentially taking ECF's business elsewhere. But the only other evidence he provided was the statement in his declaration that he asked respondents about conflicts of interest during their initial meeting in March 2016, which we have disregarded as inconsistent with his prior testimony. As such, Hudson has not provided any admissible evidence to support his claim that respondents intended to induce his reliance on their misrepresentations. (See *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 30 ["'something more than nonperformance is required to prove the defendant's intent not to perform his promise'"].)

Hudson also fails to establish a disputed issue of fact regarding whether he reasonably relied on respondents' misrepresentations. He does not dispute the material facts surrounding the retainer agreement; he acknowledges that he read and understood the agreement, he signed it on behalf of ECF, and that the retainer designated only ECF as the "client."

22

He does not point to any document in which respondents agreed to represent him individually, or any record of any filing or appearance by respondents as his representative. Instead, he argues that the trial court improperly weighed the evidence by disregarding his statement that despite the express terms of the retainer, he was "led to believe" that respondents were representing him. Hudson's vague statement that he was "led to believe" he was individually represented, without more, cannot establish a triable issue of fact. Moreover, it was undisputed that Hudson was the owner and head of multiple business entities and had experience retaining attorneys. Thus, Hudson has not shown a factual issue as to whether it was reasonable for him to rely on the purported misrepresentations by respondents that they would represent him individually.[6] Finally, we agree with respondents and the trial court that Hudson presented no admissible evidence that respondents' purported misrepresentations caused him damages. "Fraudulent representations which work no damage cannot give rise to an action at law." (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120,

---

[6] We note that Hudson at times contends that respondents told him they would represent him "individually" and at times "as an officer of ECF." Respondents raised this issue below and Hudson has offered no explanation for the discrepancy. To the extent that Hudson claims an agreement to some type of legal representation other than in his individual capacity, he has not alleged it in his complaint and we therefore need not consider it. (See Oakland *Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648 ["[T]he pleadings set the boundaries of the issues to be resolved at summary judgment . . . . A 'plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.'"].)

23

132, quoting *Nagy v. Nagy* (1989) 210 Cal.App.3d 1262, 1268.) Causation requires proof that the defendant's conduct was a "'substantial factor'" in bringing about harm to the plaintiff. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052-1053.) "A plaintiff cannot recover damages based upon speculation or even a mere possibility that the wrongful conduct of the defendant caused the harm." (*Williams v. Wraxall, supra,* 33 Cal.App.4th at p. 133, citing *Simmons v. West Covina Medical Clinic* (1989) 212 Cal.App.3d 696, 702.)

Here, Hudson did not dispute the chain of events in the bankruptcy action, including the appointment of the examiner, the issuance of a "scathing" report finding numerous and severe accounting and management issues with ECF, and the subsequent appointment of a trustee. Instead, he argues that in the absence of respondents' misrepresentations, he would have retained his own counsel, who would have prepared him for the bankruptcy proceedings, and therefore the examiner's report might have been more favorable. However, beyond stating that he *believed* the bankruptcy outcome would have been better absent respondents' misrepresentations, he offers no evidence on which he based that belief. Hudson admitted he did not know if the examiner's opinion would have changed if Hudson had retained individual counsel. In opposing summary judgment, Hudson pointed to no other evidence supporting his contention that he "likely would have avoided significant problems" in the bankruptcy action. Instead, the undisputed evidence in the record established that the examiner reviewed ECF's records and identified multiple instances of poor management practices, as well as Hudson's potentially fraudulent transfer of assets from ECF to other entities. Hudson's speculation regarding what

24

might have occurred if he had his own counsel cannot overcome these undisputed facts as to the requisite causation.

In sum, Hudson has failed to establish a triable issue of fact as to his intentional and negligent misrepresentation claims. Respondents were therefore entitled to judgment in their favor as a matter of law.[7]

## DISPOSITION

The order granting summary judgment is affirmed. Respondents are entitled to their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

CURREY, P.J.

MORI, J.

---

[7] In light of our decision, we need not reach Hudson's arguments that the court erred in granting summary judgment on alternative grounds regarding the *Barton* doctrine, the affirmative defense of unclean hands, and the statute of limitations.