Filed 5/27/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| EDGAR OSUNA, Plaintiff and Appellant, v. SPECTRUM SECURITY SERVICES, INC., Defendant and Respondent. | 2d Civ. No. B338047 (Super. Ct. No. 2023CUOE015333) (Ventura County) |

Due to the systemic underenforcement of the Labor Code, the Labor Code Private Attorneys General Act of 2004 (Labor Code,[1] § 2698 et seq.; PAGA) deputizes employees to stand in the shoes of the state to pursue civil penalties on behalf of themselves and other "aggrieved employees." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).) So long as they were employed by the alleged violator and personally suffered at least one Labor Code violation, aggrieved employees have standing to bring representative PAGA actions. (*Kim v. Reins International*

---

[1] Statutory references are to the Labor Code.

*California, Inc.* (2020) 9 Cal.5th 73, 81-84 (*Kim*).) No more is required.

The Legislature recently adopted Assembly Bill No. 2288 (2023-2024 Reg. Sess.), which amended portions of section 2699. Among other changes, Assembly Bill No. 2288 "requir[es] an aggrieved employee to have personally suffered the alleged violations within [PAGA's] one-year statute of limitations." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2288 (2023-2024 Reg. Sess.) as amended June 21, 2024, pp. 15-16.) Because those amendments apply only to lawsuits filed on or after June 19, 2024, however, they are inapplicable here. (See Stats. 2024, ch. 44, § 1.) All references to section 2699 in this opinion are to the version in effect during the proceedings below and define an " 'aggrieved employee' " as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (See § 2699, former subd. (c); Stats. 2016, ch. 31, § 189.)

Edgar Osuna sued Spectrum Security Services, Inc., for purported violations of the Labor Code. He asserted five individual and class claims, and a sixth representative PAGA claim. The trial court dismissed Osuna's class claims, sent his individual claims to arbitration, and sustained Spectrum's demurrer to his representative PAGA claim without granting leave to amend. It concluded that Osuna lacks standing to bring the PAGA claim because he did not suffer a Labor Code violation during the one-year statute of limitations period for recovering civil penalties.

Osuna challenges that conclusion on appeal, contending he is an aggrieved employee with standing to assert a representative PAGA claim. We agree. In concluding otherwise, the trial court

2

erroneously grafted requirements related to PAGA's one-year statute of limitations for recovering civil penalties onto the definition of "aggrieved employee."  Given the adoption of Assembly Bill No. 2288 (2023-2024 Reg. Sess.), we publish this opinion to reinforce the standing requirements under former section 2699.  We reverse the portion of the order sustaining Spectrum's demurrer to Osuna's representative PAGA claim.

FACTUAL AND PROCEDURAL HISTORY

The facts are taken from Osuna's first amended complaint (FAC), which we accept as true in reviewing the trial court's order sustaining Spectrum's demurrer to Osuna's PAGA claim. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

Osuna worked for Spectrum from October 2011 to February 2022.  During his tenure Spectrum allegedly committed Labor Code violations against Osuna and other employees.  The violations against other employees purportedly continued after Osuna's employment terminated.

In August 2023, Osuna notified the Labor and Workforce Development Agency (LWDA) of Spectrum's alleged failure to: (1) provide compliant meal and rest periods (citing §§ 226.7 & 512), (2) pay minimum and overtime wages (citing §§ 510 & 1194), (3) reimburse business expenses (citing § 2802), (4) furnish accurate wage statements (citing § 226), and (5) timely pay final wages upon separation (citing §§ 201-203).  The notice was submitted on behalf of Osuna "and all current and former non-exempt employees employed by Spectrum."

Osuna sued Spectrum when the LWDA did not respond to his notice within the statutory period.  The operative FAC, filed in January 2024, includes a representative PAGA claim based on the underlying violations identified in Osuna's LWDA notice, and

3

individual and class claims based on the same allegedly unlawful conduct.

Spectrum demurred to the PAGA claim in Osuna's FAC. It argued the applicable one-year statute of limitations bars the claim because Osuna did not provide the LWDA with notice of the alleged Labor Code violations until 18 months after his employment ended. Spectrum also argued Osuna lacks standing to bring his PAGA claim because he was not employed during the time he sought to represent other aggrieved employees. (Citing *Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476 (*Robinson*).) It urged the trial court to sustain the demurrer without granting leave to amend.

The court agreed with Spectrum that Osuna lacks standing to bring his PAGA claim:

> "Only an 'aggrieved employee' may bring a PAGA action. ' "[A]ggrieved employee" means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.' [Citation.] 'The violations for which penalties are sought are determined by the allegations of the complaint [[c]itations].' [Citation.]
>
> "By its terms, the PAGA claims pleaded in the [FAC] are limited to those occurring within the 'operative limitations period.' The statute of limitations for PAGA claims is one year. [Citations.] Thus, where a plaintiff's employment is terminated, [they have] one year to file a PAGA notice with the LWDA for Labor Code violations occurring during employment or upon discharge. [Citations.]

4

"[Osuna] worked for Spectrum until February 2, 2022. . . . The [FAC] alleges that [he] filed his LWDA notice on August 3, 2023.

"Therefore, the PAGA claims pleaded in the amended complaint are those occurring within the one year prior to August 3, 2023. Because [Osuna's] last day of employment was well before that, he did not personally sustain a Labor Code violation pleaded in the amended complaint. He is, therefore, not an 'aggrieved employee' as to any of the pleaded claims, and he consequently lacks standing to assert those claims."

The court accordingly sustained Spectrum's demurrer to the PAGA claim in the FAC without granting leave to amend.[2]

DISCUSSION

*Appealability*

Before turning to the issue of representative PAGA standing, we must resolve the threshold issue of appealability. Spectrum contends we should dismiss Osuna's appeal because "an order sustaining a demurrer to [fewer] than all of the [claims] in a complaint is not immediately appealable." (Citing *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 773.) It also contends the "death knell" doctrine—an exception to this general rule—is inapplicable here because Osuna has not shown that the trial court's order was "a de facto

---

[2] The court also granted Spectrum's motion to dismiss Osuna's class claims and compel arbitration of his individual claims. Osuna does not challenge these portions of the court's order in this appeal.

5

final judgment for absent plaintiffs." (Quoting *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 759 (*Baycol*).)

We disagree with Spectrum's contentions. In its order the trial court dismissed Osuna's class claims. Osuna does not challenge those dismissals here. The issue, therefore, is whether the death knell doctrine permits Osuna to challenge the portions of the order sustaining the demurrer to his representative PAGA claim. We conclude it does.

The death knell doctrine provides that an order allowing a plaintiff to pursue an individual claim but preventing them from maintaining a representative PAGA claim is to be treated as a final judgment. (*Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, 200-201 (*Miranda*).) This is because " ' "without the incentive of a possible group recovery the . . . plaintiff may find it economically imprudent to pursue [their] lawsuit to a final judgment and then seek appellate review." ' " (*Id.* at p. 201.)

Spectrum contends the *Miranda* rule is inapplicable here because the trial court's order was not final for absent plaintiffs on Osuna's representative PAGA claim since he could have substituted in another plaintiff. (See *Miranda, supra,* 241 Cal.App.4th at p. 202.) But this argument ignores that the court sustained Spectrum's demurrer to the PAGA claim *without granting leave to amend.* Spectrum also suggests that no viable plaintiff exists—precisely the situation in *Miranda.* (See *Miranda,* at p. 202.) And if one does exist Spectrum argues Osuna forfeited the right to substitute them in now because he did not attempt to do so during the proceedings below. (Citing *Payne v. United California Bank* (1972) 23 Cal.App.3d 850, 857-858.)

6

At oral argument, Osuna said there was no other aggrieved employee like him who had submitted a prefiling notice to the LWDA and tolled the one-year statute of limitations for recovering civil penalties.  (See § 2699.3, subd. (a)(2)(A), former subd. (d); Stats. 2016, ch. 31, § 191; *Arce v. The Ensign Group, Inc.* (2023) 96 Cal.App.5th 622, 630 (*Arce*).  Thus, there is no other plaintiff able to maximize the recovery of civil penalties on behalf of aggrieved employees and the LWDA.  (§ 2699, former subd. (i); *Arias*, *supra*, 46 Cal.4th at pp. 980-981.)  If he is not allowed to stand in for the LWDA, Osuna contends aggrieved employees and the state will be stripped of the ability to recover the maximum amount of relief "designed to protect the public." (*Arias*, at p. 981.)

We conclude the *Miranda* rule applies here.  The order dismissing the representative PAGA claim without leave to amend operates as "a de facto final judgment for absent plaintiffs" (*Baycol*, *supra*, 51 Cal.4th at p. 759) and is appealable (*Miranda*, *supra*, 241 Cal.App.4th at p. 203).

*Standard of review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions[,] or conclusions of fact or law. [Citation.]  We also consider matters [that] may be judicially noticed.'  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that

7

the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]" (*Blank*, *supra*, 39 Cal.3d at p. 318.)  Our review of the order sustaining the demurrer, including any standing determination, is de novo.  (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

*PAGA standing*

"The Legislature enacted PAGA to remedy systemic underenforcement of many worker protections.  This underenforcement was a product of two related problems.  First, many Labor Code provisions contained only criminal sanctions, and district attorneys often had higher priorities.  Second, even when civil sanctions were attached, the government agencies with existing authority to ensure compliance often lacked adequate staffing and resources to police labor practices throughout an economy the size of California's.  [Citations.]  The Legislature addressed these difficulties by adopting a schedule of civil penalties ' "significant enough to deter violations" ' for those provisions that lacked existing noncriminal sanctions, and by deputizing employees harmed by labor violations to sue on behalf of the state and collect penalties, to be shared with the state and other affected employees.  [Citations.]" (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 545.)  Those deputized are referred to as "aggrieved employee[s]."  (See § 2699, former subd. (a).)

"All PAGA claims [brought by aggrieved employees] are 'representative' actions in the sense that they are brought on the state's behalf.  The employee acts as 'the proxy or agent of the state's labor law enforcement agencies' and 'represents the same

8

legal right and interest as' those agencies—'namely, recovery of civil penalties that otherwise would have been assessed and collected by the [LWDA].' [Citations.] The employee may therefore seek any civil penalties the state can, including penalties for violations involving employees other than the PAGA litigant [themselves]." (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 185.)

"An employee seeking PAGA penalties must notify the employer and . . . [LWDA] of the specific labor violations alleged, along with the facts and theories supporting the claim. [Citations.] If the agency does not investigate, does not issue a citation, or fails to respond to the notice within 65 days, the employee may sue. [Citation.]" (*Kim, supra*, 9 Cal.5th at 81.) But "[n]ot every private citizen can" maintain such a suit; as set forth above, "[o]nly an aggrieved employee has PAGA standing. [Citations.]" (*Id.* at pp. 81-82, italics omitted.) The Labor Code defines such an employee as " 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.' [Citation.]" (*Id.* at p. 82.) The issue here is whether Osuna meets that definition.

We conclude he does. " 'In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment. [Citation.] We look first to the words of the statute, which are the most reliable indications of the Legislature's intent. [Citation.] We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole.' [Citation.] 'If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable

9

construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.' [Citation.] Considering the remedial nature of legislation meant to protect employees, we construe PAGA's provisions broadly, in favor of this protection. [Citations.]" (*Kim*, *supra*, 9 Cal.5th at p. 83.)

The words of section 2699, former subdivision (c) are clear and unambiguous: To have standing to bring a PAGA action, "[t]he plaintiff must be an aggrieved employee, that is, someone 'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.' [Citation.]" (*Kim*, *supra*, 9 Cal.5th at pp. 83-84.) Here, the FAC alleges that Osuna was employed by Spectrum for more than a decade and that he suffered the same Labor Code violations that underlie his representative PAGA claim. He is thus an aggrieved employee with PAGA standing.

*Johnson v. Maxim Healthcare Services, Inc.* (2021) 66 Cal.App.5th 924 (*Johnson*) is instructive. The *Johnson* plaintiff signed an agreement with a noncompete clause in September 2016. (*Id.* at p. 927.) In June 2019, she notified the LWDA that the agreement allegedly violated the Labor Code, stating her intent to bring a PAGA action on behalf of herself and employees who signed similar agreements. (*Johnson*, at p. 927.) When the LWDA did not respond, she sued her employer. (*Ibid.*) The employer demurred to her complaint, arguing that the plaintiff's individual claim was time-barred because she waited nearly three years to notify the LWDA of its alleged violation. (*Ibid.*) The trial court agreed, additionally concluding that without her individual claim the plaintiff could not bring a representative

10

PAGA claim.  (*Johnson*, at p. 927.)  It sustained the demurrer without granting leave to amend.  (*Ibid*.)

Our colleagues in the Fourth Appellate District reversed (*Johnson, supra*, 66 Cal.App.5th at p. 932), concluding that "an employee . . . whose individual claim is time-barred . . . may still pursue a representative claim under PAGA" (*id*. at p. 929).  The court explained that under *Kim, supra*, 9 Cal.5th at page 88, "PAGA standing does not depend on maintaining an individual Labor Code claim."  (*Johnson*, at p. 930.)  Rather, it was enough that the plaintiff alleged she was employed by the defendant-employer and "personally suffered at least one Labor Code violation on which the PAGA claim [was] based."  (*Ibid*.)  "The fact that [her] individual claim [was] time-barred [did] not nullify the alleged Labor Code violations nor strip [the plaintiff] of her standing to pursue PAGA remedies."  (*Ibid*.)  "[A]n 'aggrieved employee' has standing to pursue a PAGA claim, irrespective of whether [they] maintain[] a separate Labor Code claim."  (*Ibid*.)

The Supreme Court has cited *Johnson* favorably, and declared that "a worker becomes an 'aggrieved employee' with standing to litigate claims on behalf of fellow employees upon sustaining a Labor Code violation committed by [their] employer."  (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1121 (*Adolph*).)  The trial court here cited the rule from *Johnson*, but did not apply it.  Instead, the court relied on *Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521 at page 543 for the proposition that "PAGA plaintiffs are only authorized by the LWDA to pursue and/or settle PAGA claims that arise within the year prior to their PAGA notice."  But the language quoted was the *Amaro* appellant's contention—a contention the *Amaro* court found "unpersua[sive]."  (*Ibid*.)  This

was because it conflated PAGA's statute of limitations with section 2699's standing requirements: "[T]he PAGA statute of limitations is an affirmative defense meant to facilitate the LWDA's investigation and the employer's response. *It is not jurisdictional.*" (*Amaro*, at p. 543, italics added.)

"'The *remedy* for a Labor Code violation . . . is distinct from the *fact* of the violation itself'" (*Kim, supra,* 9 Cal.5th at p. 84); "only the latter is required for PAGA standing" (*Adolph, supra,* 14 Cal.5th at p. 1120). An employee therefore has PAGA standing so long as "'*one or more* of the alleged violations was committed' against [them]." (*Kim,* at p. 85.) Requiring the employee to have a remedy for the violation—e.g., by ensuring that PAGA's statute of limitations has not yet run—"would add an expiration element to the statutory definition of standing." (*Kim,* at p. 85.) Had "the Legislature intended to [so] limit PAGA standing . . . it could have worded the statute accordingly." (*Ibid.*) "'That it did not implies no such . . . requirement was intended.'" (*Ibid.*)

The recent adoption of Assembly Bill No. 2288 reinforces our conclusion. Assembly Bill No. 2288 was adopted, in part, to supersede *Johnson, supra,* 66 Cal.App.5th 924 by permitting only those who suffer an alleged Labor Code violation during the one-year statute of limitations to bring a representative PAGA claim. (See Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2288 (2023-2024 Reg. Sess.) as amended June 21, 2024, pp. 15-16.) That the Legislature saw fit to add to the PAGA standing requirements in place when Osuna brought his claims implies they did not formerly exist.

Spectrum's attempts to distinguish *Johnson* are not persuasive. Spectrum claims the *Johnson* court concluded that

12

the plaintiff there had PAGA standing because, as a current employee of the defendant-employer, she was still subject to the allegedly illegal noncompete agreement.  But the plaintiff's continued employment was not central to the *Johnson* court's holding; that was one of the ways the court distinguished *Robinson*, *supra*, 53 Cal.App.5th 476.  (*Johnson*, *supra*, 66 Cal.App.5th at p. 932.)  Equally important to distinguishing *Robinson* was that the *Johnson* plaintiff had alleged that her defendant-employer "persist[ed] in requiring employees to sign agreements that contain the prohibited terms."  (*Johnson*, at p. 932.)  That is akin to Osuna's allegation in the FAC that he and his fellow aggrieved employees "were and *currently are* denied the benefits and protections of the Labor Code."  (Italics added.)

That Osuna allegedly suffered one or more Labor Code violations during his employment with Spectrum also distinguishes this case from *Robinson*.  The *Robinson* plaintiff initially alleged his defendant-employer committed Labor Code violations from February 2015 to June 2017.  (*Robinson*, *supra*, 53 Cal.App.5th at p. 480.)  Parties in a related case then reached a settlement regarding the same alleged violations for the period from March 2013 to January 2018.  (*Ibid*.)  The *Robinson* plaintiff subsequently sought to narrow his complaint to the post-settlement period—i.e., to "claims arising exclusively after he was . . . employed."  (*Id*. at p. 484.)  "By then, however, [the plaintiff] was no longer employed by [the defendant] and thus was not affected by any of the alleged violations."  (*Ibid*.)  Osuna's FAC is not similarly narrow.

Spectrum's reliance on *Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42 (*Esparza*) and *Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824 (*Brown*) is not persuasive.  Those cases

13

predate *Kim*, *supra*, 9 Cal.5th 73 and *Adolph*, *supra*, 14 Cal.5th 1104. They also examine PAGA's statute of limitations for recovering civil penalties, not standing. (Cf. *Hutcheson v. Superior Court* (2022) 74 Cal.App.5th 932, 939 [noting that PAGA standing and PAGA's statute of limitations are different concepts].)

In *Esparza*, the defendant-employer ended its practice of not paying employees premium wages for missed meal periods in June 2007. (*Esparza*, *supra*, 36 Cal.App.5th at pp. 46-47.) The plaintiffs did not file a PAGA claim challenging that practice until February 2009, however, well past PAGA's one-year statute of limitations. (*Esparza*, at pp. 48, 59.) Because none of the alleged violations occurred during the limitations period—against the plaintiffs or any other aggrieved employee—the PAGA claim was time-barred. (*Esparza*, at pp. 60-64.) Similarly, in *Brown*, the plaintiff waited more than five years after her employment ended to allege certain Labor Code violations she and her fellow aggrieved employees purportedly suffered during the time she was employed. (*Brown*, *supra*, 28 Cal.App.5th at pp. 832-833.) But "[b]y then, the one-year statute of limitations on her PAGA claims . . . had long since run." (*Id*. at p. 839.)

In contrast to *Esparza*, *supra*, 36 Cal.App.5th 42 and *Brown*, *supra*, 28 Cal.App.5th 824, the FAC here alleges that Osuna and his fellow aggrieved employees "were and currently are" suffering Labor Code violations. Because Osuna alleges that he suffered at least one Labor Code violation, and also alleges ongoing violations (including Spectrum's ongoing failure to timely pay all his wages due), there is no statute of limitations issue.

*Williams v. Alacrity Solutions Group, LLC* (2025) 110 Cal.App.5th 932 (*Williams*), decided while this appeal was

14

pending, is not to the contrary. Our colleagues in Division 5 of this district identified the three " 'prerequisites' " for serving as a PAGA plaintiff: (1) qualifying as an " 'aggrieved employee,' " (2) providing written notice to the LWDA, and (3) satisfying the statute of limitations. (*Williams*, at p. 941.) The *Williams* plaintiff did not seek civil penalties "on his own behalf" and also "abandoned" his individual claims. (*Id.* at p. 938 & fn. 4.) Consequently, that plaintiff could not satisfy the requirement that "a PAGA action be brought 'on behalf of [the PAGA plaintiff] *and* other current or former employees.' " (*Id.* at p. 942.) Nor could his failure to bring a timely individual claim serve PAGA's purpose to "expeditiously" resolve workplace violations. (*Williams*, at p. 943.) In contrast here, Osuna brought *individual* claims for unpaid overtime and meal and rest period premium wages. He also alleged that he and his fellow aggrieved employees "were and *currently are* denied the benefits and protections of the Labor Code," including Spectrum's ongoing failure to timely pay all his wages due. (Italics added.)

*Williams* also did not reach the issue of standing (the first prerequisite), stating, "[W]e have no occasion to reach Williams's further arguments regarding why he has standing under PAGA notwithstanding the untimeliness of his individual claims." (*Williams*, *supra*, 110 Cal.App.5th at p. 946.) Our colleagues affirmed the sustaining of a demurrer without leave to amend because the "untimeliness of Williams's individual claims . . . require[d] dismissal of the PAGA action." (*Id.* at p. 947.) No such obstacle is present here.

In our view, Spectrum's reliance on *Arce*, *supra*, 96 Cal.App.5th 622 is inapt. There, the trial court granted summary judgment in favor of the defendant employer on the employee's

representative PAGA claim because "Arce had not presented sufficient competent evidence that she had suffered a Labor Code violation at any point during her employment, and, therefore, had not established a triable issue of material fact that she had standing to pursue a PAGA claim." (*Arce*, at p. 628.) Our colleagues in Division 5 of this district reversed because the employer did not produce sufficient evidence to establish "Arce had not suffered a Labor Code violation during her employment." (*Id*. at pp. 633-634.) Because we must treat Osuna's allegations as true (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528), and Osuna has alleged numerous violations during his employment with Spectrum, including ongoing violations, this is sufficient to possess standing. (*Arce*, at p. 632.)

"The Legislature defined PAGA standing in terms of violations, not injury. [Osuna] became an aggrieved employee, and had PAGA standing, when one or more Labor Code violations were committed against him." (*Kim*, *supra*, 9 Cal.5th at p. 84.) Consistent with *Adolph*, *Kim*, and *Johnson*, *supra*, 66 Cal.App.5th 924, Osuna alleges he was employed by Spectrum and suffered one or more Labor Code violations. This was sufficient to confer standing on him to bring a representative PAGA action. (*Adolph*, *supra*, 14 Cal.5th at p. 1121.) The trial court erred when it concluded otherwise. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

16

DISPOSITION

The portion of the trial court's April 30, 2024, order sustaining Spectrum's demurrer to Osuna's representative PAGA claim is reversed, and the matter is remanded for further proceedings consistent with this opinion. Osuna shall recover his costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

17

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Sullivan & Yaeckel Law Group, Eric K. Yaeckel and Brendan Patrick Maloney for Plaintiff and Appellant.

Duane Morris, Aaron T. Winn, Sarah A. Gilbert and Eden E. Anderson for Defendant and Respondent.